THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of EUGENE LEWIS, Respondent, *v.* MAY KOLLENDER, Appellant.

County Court, Nassau County, January 18, 1939.

*Boehm & Zeiger*, for the appellant.

*Edward J. Neary, District Attorney*, for the People.

*Bernard H. Reich, Corporation Counsel [Louis A. Friedman* of counsel], *amicus curiœ.*

JOHNSON, J. This is an appeal by the defendant from a judgment of conviction in the City Court of Long Beach. Conviction was had under the Long Beach zoning ordinance of 1930. This is the permanent zoning ordinance of the city of Long Beach superseding a temporary ordinance enacted in 1922. Its validity has recently been sustained by the Court of Appeals in the case of *Baddour* v. *City of Long Beach* (279 N. Y. 167).

The information in the instant case charged that the defendant wrongfully and unlawfully used certain premises located in a residential district for a use other than as a one-family detached house for one housekeeping unit only, and that, on the contrary, she used the same for a rooming and/or boarding house.

Sections 3 and 4 of the Long Beach zoning ordinance of 1930 limited the use in certain residence districts to a " one-family house for one housekeeping unit only." The former ordinance of 1922 had limited such use to " a private dwelling house, two or more stories." Thus, under the present ordinance the use of the defendant's premises for any purpose other than that of a one-family house for one housekeeping unit only would constitute a violation of the ordinance punishable as a misdemeanor, and, hence, the use by the defendant of her premises for the renting of rooms or boarding house as a business would, obviously, constitute such violation.

A subsequent provision of the 1930 ordinance, being section 18 thereof, provided that the limitations of the ordinance should not apply to a building " legally existing " at the time of the passage of the ordinance, " nor to the continuance of the same existing use of any such building or structure."

This is the usual provision contained in such ordinances preserving so-called " non-conforming uses," that is, premises being used for some other purpose at the time of the enactment of the ordinance maycontinue to be used for such purpose without violation of the ordinance.

In its direct case the People introduced evidence 'which, in the opinion of the court, was sufficient *prima facie* to show that the defendant was using her premises for a use other than a one-family house for one housekeeping unit only, and, indeed, as a boarding or rooming house as a business.

Two questions are raised upon this appeal:

(1) The motion of the defendant at the close of the People's direct case raises the question whether it was incumbent upon the People in its direct case to prove the negative of the exception, namely, that the present use of the premises was not a use to which the premises were devoted when the ordinances were enacted and was not, therefore, a so-called non-conforming use.

(2) The defendant's motion at the close of the whole case, following the proof adduced by the defendant in an attempt to show that the use was a non-conforming use, raised the question of where the burden of proof (using that phrase in its proper sense) rested with respect to the alleged non-forming use.

Hence, these two motions raised two quite different questions:

(1) Whether it is necessary in a case such as this for the People to plead the negative of the exception and to adduce evidence as a part of its direct case in order to establish a *prima facie* case.

(2) Whether, after the entire case is completed and the defendant has adduced proof tending to bring herself within the exception, the ultimate burden of proof of the defendant's guilt, using the words " burden of proof " in their true sense of establishing a fact by a preponderance of evidence, rather than in the loose sense of going forward with evidence in the first instance, rested upon the People or the defendant.

A careful reading of the record by this court and the rulings of the court below indicate that the latter court may have proceeded upon the theory that the defendant was not only bound to go forward with proof that she was within the exception, but that, having adduced such proof, the burden of sustaining her claim that she was within the exception rested upon her and that to that extent the burden of proof of the defendant's guilt was not upon the People.

In order properly to determine these questions, it will be necessary to discuss the principles which have been established and the authorities sustaining them, and in so doing there may be

disregarded for the moment the difference between civil and criminal cases as to the burden of proof and the quantum of proof, as well as the sometimes loose use of the phrase " burden of proof," except as it may be necessary to refer to those points in the discussion of the authorities and in determining what was actually decided in the cases discussed.

I think that an examination of those authorities clearly demonstrates that the following principles are well established as the law of this State:

(1) When a statute contains in and as a part of its enacting clause an exception or exceptions to the effect that in certain cases, or under certain circumstances, the offense prohibited by the statute is not to be considered as having been committed, that constitutes a true exception which it is necessary for the plaintiff or the People in an action based upon the statute to negative both by pleading and by proof.

(2) Where, however, there is no such exception in the enacting clause of the statute, or referred to therein, but later in the statute or in a subsequent statute an exception or exceptions are enumerated, there is then presented the case of a proviso, rather than an exception, and the plaintiff or the People bringing action upon the statute need neither plead the negative of the exception nor adduce proof of such negative in order to make a *prima facie* case.

(3) Even where the exception is in the enacting clause, so that the plaintiff or the People are required to negative the exception in their pleading, there is a line of cases holding that the plaintiff or the People are not required to adduce proof of the negative in order to make out a *prima facie* case; this, because in certain cases the negative of an issue is not possible of direct proof and the facts to prove the negative are peculiarly and immediately within the knowledge of the defendant, so that, as a matter of convenience at least, the burden of going forward with such proof should rest upon him.

*Harris* v. *White* (81 N. Y. 532) was an action to recover for services rendered for the defendant and one of the defenses was that the services were rendered as a driver of the defendant's horses in races for money in violation of the laws against horse racing and gambling. The statute, however, prohibited such acts except in contests where by special laws for that purpose it was expressly allowed. Certain special laws allowed it in certain cases. The question presented, therefore, was whether the defendant was required to show not only that the acts were within the statute, but, also, whether he was required to allege and prove that they were not within the exception. The exception in that case was

embodied in the enacting clause of the statute itself and was not an exception or proviso following that clause. Referring to the principle that an exception in the enacting clause of a statute must be negatived in the pleading, while a subsequent exception in the nature of a proviso need not be so negatived, the court held that the exception being incorporated in the enacting clause the defendant was required to plead the exception and being required to plead it, it was necessary for him also to prove it. In discussing those principles the court referred to the exception, namely, that where the subject-matter and means of proof of the negative are peculiarly within the knowledge and power of the defendant, as in cases of violations of excise laws and of hunting without a license, it is for the defendant or accused party to prove it.

*Rowell* v. *Janvrin* (151 N. Y. 60) involved a statute providing that stockholders of a corporation should be severally liable to creditors to an amount equal to the amount of stock held by them. The statute was subsequently amended generally without specifying any particular section so as to exempt from such liability the case of stock issued for the purchase of property instead of for money. The question presented was one of pleading and the complaint would be good unless the plaintiff was bound to negative in the complaint the provisions of the amendment. The court restated the ancient rule that where an exception is embodied in the enacting clause of a statute he who pleads the clause must plead the exception; but, where there is a clause for the benefit of the pleader followed afterward by a proviso which is against him, he need plead the clause only and leave it to his adversary to show the proviso. The court said (p. 67):

" The reason upon which this rule of pleading rests seems to be that when a party counts upon the enacting clause of a statute containing an exception, as the foundation of his action, he cannot logically state his case unless he negative the exception. But if the modifying words are no part of the enacting clause, but are to be found in some other part of the statute, or in some subsequent statute, it is otherwise, and he may then state his case in the words of the enacting clause, and it will be *prima facie* sufficient. When we bear in mind the reason of the rule and the necessity for pleading the negative, it is not very important to deal with the somewhat vague and shadowy distinctions, which are to be found in the books, between an exception and a proviso. But the distinction, however difficult to state, has always been recognized.

" An exception exempts something absolutely from the operation of a statute by express words in the enacting clause; a proviso defeats its operation conditionally. An exception takes out of the

statute something that otherwise would be part of the subject matter of it; a proviso avoids them by way of defeasance or excuse."

As the exception in that case was truly a proviso, the plaintiff was not bound to negative it in his pleading. He could plead the original enactment and leave it to the defendant to take the case out of that enactment by pleading the proviso. That, in fact, was what the defendant did. However, in determining the case the court significantly said (p. 69): "But before the complaint was dismissed some proof should have been given of the facts so pleaded. When the allegations of the answer were sustained by proof of the fact that the stock was issued, not for cash, but for property, then the defense would be complete unless the plaintiff gave proof tending to show either that the property was not such as pertained to the business, or that it was deliberately overvalued for the fraudulent purpose of evading the statute. It would not be enough to show that there was an honest error of judgment on the part of the trustees in fixing the value, but it must be shown that they acted in bad faith. We conclude, therefore, that in this respect the complaint was sufficient."

It would seem, therefore, that the above case is substantially similar to the instant case, except that the latter is a criminal prosecution and the former a civil action. The result in the *Rowell* case was that the plaintiff was not required to plead the proviso, nor to adduce proof to negative it, and that it was incumbent upon the defendant not only to plead but to adduce proof in support of it. This the defendant did; and when the allegations of his answer were sustained by proof tending to show that he was within the proviso it would become incumbent upon the plaintiff in order to succeed to adduce proof to rebut the defendant's evidence.

Although, as was pointed out in the case last cited, the distinction is somewhat vague and shadowy it has, nevertheless, been recognized and continued by the courts in later authorities.

*People* v. *Stedeker* (175 N. Y. 57) is a leading authority which has subsequently been most frequently cited and followed. It involved a statute making it a felony to keep a room for recording bets on the result of horse races " except when another penalty is provided by law." Another statute provided for a different penalty where the betting occurred upon an authorized race track. The question was whether the indictment was required to negative the exception. Referring to the authorities above cited, the court found the rule well settled that if provisos and exceptions are contained in separate clauses of the statute the indictment need not negative them as they are matters of defense which the People

need not anticipate and which may more properly come from the defendant. But if, on the contrary, the exceptions themselves are a part of the enacting clause it is necessary to negative them in the indictment in order to state the crime. In the particular case under consideration the exception was embodied in and was the heart of the enacting clause, with the result that the indictment, in failing to negative it, was insufficient.

*People* v. *Davico* (170 App. Div. 337) was a similar case involving a statute making it a felony to sell cocaine " except under the conditions and to the persons authorized by this section." The defendant, having been convicted, was granted a certificate upon the ground the exception being part of the enacting clause of the statute it was incumbent upon the People to adduce evidence to show that the defendant's act was not within the exception under the ruling in the *Stedeker* case (*supra*). The conviction was reversed, however, not solely upon that ground but also because in other particulars the evidence was insufficient to sustain it.

A good example of the distinction between the two classes of cases appears from two rather recent decisions of Surrogate WIN-GATE of Kings county (*Matter of Sitkin*, 151 Misc. 448, and *Matter of Lawson*, 158 id. 902).

The *Sitkin* case involved section 18 of the Decedent Estate Law, subdivision 1 of which gave to the surviving spouse the right of election to take against the will " subject to the limitations, conditions and exceptions contained in this section." Those limitations, conditions and exceptions were then enumerated, one of which was that no husband who had abandoned his wife, and no wife who had abandoned her husband, should have a right of election. The question presented was whether the surviving spouse asserting the right of election was required to prove non-abandonment, or whether the burden of showing abandonment was upon the adversary. Clearly, the exception was embodied in and made a part of the enacting clause which gave the right of election, but gave it subject to certain exceptions thereafter enumerated. It was precisely the same as if the statute had provided that the right of election should exist except that a husband or wife who had abandoned his or her spouse should not have such right. The court found the rule to be well established that where the exception to the right is thus embodied in the enacting clause it is the duty of the person claiming the right to prove that he is not within the terms of the exception.

In the *Lawson* case, however, the statute involved was section 87 of the Decedent Estate Law. That statute provided for the right of the surviving husband to share in the distribution of his

wife's estate. The enacting clause contained no exception. However, in a subsequent subdivision of the section it was provided that he might not take if he had abandoned his wife. Thus, the exception to the usual right of inheritance was not included in the enacting clause as it was in the *Sitkin* case, but was a subsequent limitation in the nature of a proviso divesting the right under certain conditions so that it would be necessary for the person alleging the existence of those conditions to prove them. Hence, where the petitioner sought to remove the widower as administrator upon the ground that he was not entitled to share in his wife's estate because he had abandoned her, it was necessary to allege and prove that he was within the exception.

The authorities discussed above so clearly set forth the rule in those two classes of cases that further citation upon that point is unnecessary.

Reference will now be made to authorities holding that even where the exception is in the enacting clause of the statute and perhaps may be required to be negatived in the pleading, it is, nevertheless, unnecessary to adduce proof of the negative to constitute a *prima facie* case where the exception relates to a matter practically impossible for the plaintiff to prove but being peculiarly within the knowledge of the defendant and easily provable by him.

*Fleming* v. *People* (27 N. Y. 329) involved the sufficiency of an indictment for bigamy. The statute provided that a person having a wife living who shall marry another person shall be guilty of bigamy " except in the cases specified in the next section." The next section provided that the preceding section should not extend to certain persons and cases which were enumerated in six classes, some of them being matters which would be peculiarly within the knowledge of the person charged with bigamy. The indictment did not negative those exceptions. After the case was closed the defendant's counsel requested a charge to the jury that the prosecution was obliged to negative those exceptions by proof. The judge refused to give the instructions and the defendant was convicted. Referring to the distinction between an exception in the enacting clause and a subsequent proviso, Chief Judge DENIO stated the general rule and said that in his opinion the case under consideration was one where the exceptions were embodied in the enacting clause of the statute and that, therefore, the indictment was defective in failing to negative the exceptions, but that the indictment was defective in form only and the defect was cured under the then existing statutes. The chief judge further said, however, that the prosecution was not bound as a part of its direct case to give evidence to negative the exceptions but that that was

a matter of defense for the prisoner to make; stating as a general rule of evidence that where a negative is not possible of direct proof, or where the facts are more immediately within the knowledge of the defendant, the " *onus probandi* " is upon him; and that in the case under consideration the exceptions in question were of rare occurrence and rested peculiarly within the knowledge of the defendant. The majority of the court, however, held that the indictment was sufficient not only under the statute but under the common law, and that the People were not only not required to adduce proof of the negative but were not required to plead it.

*People* v. *Hammer* (194 App. Div. 712; affd., 232 N. Y. 564) was an indictment under the penal statute making a person guilty of manslaughter who performs an abortion upon a woman resulting in her death " unless the same is necessary to preserve her life." The indictment did not negative the exception, but the People, in establishing their *prima facie* case, assumed also the burden of adducing proof to show that the operation was not necessary to preserve life. Referring to *Fleming* v. *People* (*supra*), the court said that this was an unnecessary assumption of burden which was really upon the defendant. This remark was dictum only, and the determination of the case did not rest upon that proposition. It appears to this court doubtful whether, under that statute, even the burden of going forward with evidence to prove the exception was on the defendant, but rather that it would be incumbent upon the People to adduce evidence to negative the exception as the People actually did in that particular case. The dictum could be sustained only upon the theory discussed in the *Fleming* case (*supra*) that the statute involved was such that the exception related to matter which did not permit of proof by the People and was peculiarly within the knowledge of the defendant.

*People* v. *Tarlow* (249 App. Div. 224) involved a prosecution under a statute which prohibited selling or exposing for sale both kosher and non-kosher meat without indicating by signs and advertisements " Kosher and Non-Kosher Meat sold here." It was conceded that it was incumbent upon the People to allege in the information not only that the defendant offered for sale both kinds of meat, but, also, that he failed to display the proper signs. The People contended, however, that it was not required to prove the negative and that the defendant was required to prove that the signs were displayed as required by the statute. The court, however, said (p. 226): " But this is not a situation where a general course of conduct is prohibited, and certain exceptions specifically made. In such a situation the burden to show that the case comes within the exception lies upon a defendant and the People are not

compelled to prove the negative. It has so been held in prosecutions for bigamy (*Fleming* v. *People*, 27 N. Y. 329); from manslaughter resulting from abortion (*People* v. *Hammer*, 194 App. Div. 712; affd., 232 N. Y. 564); for selling or transporting liquors without a license (*Jefferson* v. *People*, 101 id. 19), and for practicing medicine without a license (*People* v. *Somme*, 120 App. Div. 20; affd., 190 N. Y. 541)."

As the statute involved contained the exceptions as a part of the enacting clause, the failure to display the signs was part and parcel of the offense charged, which ordinarily the People would be required to plead and prove (*People* v. *Stedeker, supra*), and, furthermore, whether or not the proper signs were displayed was not a matter so peculiarly within the defendant's knowledge as to relieve the People of the burden of adducing evidence thereof to make out a *prima facie* case.

That exception to the general rule, as was pointed out in the *Tarlow* case, is applied in situations where a general course of conduct is prohibited and certain exceptions specifically made under conditions not easily proven by the People but being peculiarly within the defendant's knowledge and easily capable of proof by him. Except, possibly, for the *Fleming* and *Hammer* cases (*supra*), an examination of the authorities discloses that this exception is almost always applied in cases where a course of conduct is prohibited unless it be licensed — as, for example, the case of selling liquor without a license, practicing medicine without a license, hunting or fishing without a license, and so forth.

Thus, *Potter* v. *Deyo* (19 Wend. 361) was a civil action to recover a penalty for selling liquor without a license. Whether or not the defendant had a license was peculiarly within his knowledge. It was held that the People must allege the lack of license but need not adduce proof in support of the allegation, as the existence of the license should be shown by the defendant.

*People* v. *Maxwell* (83 Hun, 157) was a similar case, except that it was a criminal prosecution, and the determination of the court was the same.

*Jefferson* v. *People* (101 N. Y. 19) likewise involved a statute prohibiting the sale of liquor without a license. There, however, the exception was within a subsequent section of the statute which thus restricted the operation of the original act and added an exception thereto. Referring to the general rule that where the enacting clause of the statute contains an exception the indictment must negative it, but that if the exception is contained in a subsequent clause or statute it need not be negatived by the People, but is to be shown by the defendant. The court, following *Fleming*

*v. People (supra)*, pointed out that the court in that case had referred to the cases of practicing medicine without a license and selling liquor without a license as being within the exception to the general rule and that the prosecution, although it may be required to plead the negative of the exception, is not required to prove it to make out a *prima facie* case.

*People* v. *Somme* (120 App. Div. 20; affd., 190 N. Y. 541) was a prosecution for the practice of medicine without a license.

*People* v. *Grass* (79 Misc. 457) was a prosecution for carrying a revolver without a license.

*People* v. *Willi* (109 Misc. 79; affd., 194 App. Div. 946) was a prosecution for selling liquor without a physician's prescription.

*People* v. *Ramsey* (179 App. Div. 523) was an action to recover a penalty for hunting without a license.

*People* v. *Bradford* (227 N. Y. 45) was an action to recover a penalty for hunting without a license under the provisions of subdivision 1 of section 185 of the Conservation Law, which prohibited hunting without a license " except as herein provided." Then followed the exceptions, one of which was that the owner of farm land, his immediate family, or his lessee and his immediate family would have the right to hunt on that farm land during season without a license. The People did not negative this exception in the complaint. The court held that the exception was contained and embodied in the enacting clause and that it was consequently necessary in the complaint to negative the exception. As to the People's argument that if they are required to prove the negative of the exception there will be imposed upon them a burden impossible to carry, the court said: " It is pointed out that the statute if construed as an exception names many circumstances as exempting a defendant from its operation which would be peculiarly within the knowledge of such defendant and which it would be almost impossible for the People to disprove. This is manifestly so and because it is so we do not believe that the plaintiff is compelled to go to the extent of both alleging and proving non-existence of the circumstances making the exception. On the other hand the rule seems to be fairly well established that in such a case as this while the plaintiff is obliged to plead non-existence of the exception, the burden will rest upon the defendant, who has peculiar and almost exclusive knowledge of the existence or non-existence of the facts making the exception, to prove such facts if they do exist. While this rule is a somewhat arbitrary one it is practical and based on good sense and in our opinion is applicable to such a case as the present one. (1 Greenleaf on Evidence [13th ed.], §§ 78, 79; 1 Phillips on Evidence [4th Am. Notes with Cowen &

Hill's Notes], p. 821; *Harris* v. *White*, 81 N. Y. 532, 548.) For these reasons we think the complaint was defective and that without discussing the other reasons urged therefor by the defendant, the judgment should be affirmed, with costs."

Thus the rule is clearly adduced from these cases that, where the exception is in the enacting clause and the general rule applies, the People must allege and prove the negative of the exception. Nevertheless, in cases where the charge against the defendant is a course of conduct without having procured a license or the like, proof of which is almost impossible for the People, but which is peculiarly within the defendant's knowledge and capable of proof by him, the People, although required to allege the negative, need not adduce proof of it in order to make out a *prima facie* case. In those cases it is usually said that that burden is upon the defendant. In civil actions and in actions to recover penalties it is obviously true that there rests upon the defendant the burden not only of going forward with the evidence but also the true burden of proof. Ordinarily, this would cause no difficulty in license cases. As the court said in the *Bradford* case (*supra*), the rule is an arbitrary one but based upon common sense. It would be an extraordinarily difficult, if not an impossible burden upon the plaintiff, or the People, to prove that the defendant did not have a license, while it would be a simple matter for the defendant to produce and prove his license if he has one. There may, of course, be cases where an issue of fact even on that point might arise. For example, the defendant might produce and put in evidence a license which might then be attacked as invalid or a forgery or otherwise. In such a case, in a civil action, it may well be that the burden of sustaining the validity of the license would be upon the defendant. The question here, however, is whether that would be the case where he is being prosecuted for a crime.

However, this court is of the opinion that this is not a case where the exception above discussed would be applicable. The court is satisfied in this case that the exception is not within or embodied in the enacting clause of the statute, and that, therefore, it is not a case in which the People would be required to negative the exception in the information and to adduce proof of that negative in order to make out a *prima facie* case. That being so, it is not a case where the People would be relieved of that burden of proof because of the peculiar knowledge of the facts constituting the exception on the part of the defendant. I do not feel that there is an analogy between this case and the license cases. Here, concededly, the defendant was not the owner of the premises involved at the time of the enactment of the ordinance. I do not think,

therefore, that it may be said that the knowledge of the facts which would constitute the exception is so peculiarly that of the defendant as to place upon her a burden of proof which would not otherwise exist.

This court, therefore, proceeds upon the principle that the statute here involved contains an exception, not a part of the enacting clause but a subsequent proviso, with the result that the People were not required to negative the exception in the information and were not required to adduce proof of that negative to make out a *prima facie* case. Therefore, the defendant's motion to dismiss upon that ground at the close of the People's case was properly denied.

There remains, however, the question whether the defendant, having adduced proof tending to show that she was within the exception, should establish that by a preponderance of the evidence, or whether, upon the whole case, the burden still rests upon the People to prove the defendant's guilt, that is, to establish that, in spite of the proof adduced, the defendant's use of the premises was not a non-conforming use protected by the ordinance.

In *People (Complaint of Wolff)* v. *Margolies* (166 Misc. 135), decided by this court and referred to by the court below, the exact questions here presented were not involved. In that case the question was not raised as to the necessity of the People negativing the exception by pleading and proof to make out a *prima facie* case. There the People proved, and apparently it was not disputed, that the use was in violation of the ordinance, the defendant proceeding to show that the use was a non-conforming use which existed at the time the ordinance was enacted. As to this, also, there was no serious dispute. The contention of the People was that, although such use existed at the time the ordinance was enacted, it was, nevertheless, not a non-conforming use because it was a use then prohibited by private restrictions and, consequently, was not a " lawfully existing " use. The defendant rebutted by proof, which the court held showed a release of the restrictions which made the use legal; and that upon all such proof the burden still rested upon the People to prove the defendant's guilt beyond a reasonable doubt and thus to prove that the use to which the premises had clearly been devoted, and which ordinarily would constitute a non-conforming use, was not a legal use at that time.

This court is satisfied that the determination in the *Margolies* case was correct. It cannot escape the conclusion that in a prosecution for crime the burden of proof of the defendant's guilt rests upon the People.

The statute provides that a defendant in a criminal action is presumed to be innocent until the contrary is proved and is entitled to an acquittal if there is a reasonable doubt whether his guilt has been satisfactorily shown. (Code Crim. Proc. § 389.) This statute applies whatever the defendant's defense may be. Many examples may be given. One relates to the so-called defense of insanity. The Penal Law provides that certain acts shall constitute crimes, and, in section 1120 thereof, provides that such acts shall not constitute crimes if committed by a person laboring under such a defect of reason that he did not know the nature and quality of his act or did not know that it was wrong.

This seems to me clearly the case of a proviso; that is, the statute makes certain acts crimes and then later in the statute provides that they shall not constitute crimes if committed by a person under the conditions above stated. Therefore, the rule would apply that the People need not negative the proviso in the indictment and need not as a part of their direct case prove that the defendant was not within the proviso. Of course, in such cases the People are aided by the presumption of sanity. That presumption arises because sanity is the rule and insanity the exception. A similar presumption might well be indulged in in cases involving zoning ordinances. Under all the circumstances it will be found that the limited use is the rule and the non-conforming use the exception. In any event, in a criminal prosecution under a zoning ordinance, under the rule stated, the People are not required to plead or prove as a part of their direct case the negative of the exception. As in the cases wherein sanity is a defense it is incumbent upon the defendant to adduce proof in support of that defense; but, after such proof has been adduced and the case closed, the burden of establishing the defendant's guilt beyond a reasonable doubt still rests upon the People. (*Brotherton* v. *People,* 75 N. Y. 159; *People* v. *Egnor,* 175 id. 419.)

The same is true whatever defense might be interposed. The rule as to the burden of proof in a criminal case applies not only to the prosecution but to any defense interposed to the indictment. (*People* v. *Riordan,* 117 N. Y. 71; *People* v. *Downs,* 123 id. 558; *People* v. *Russell,* 266 id. 147.)

As the Court of Appeals said in the case last cited (p. 154): " The burden of proof of guilt beyond a reasonable doubt may never be shifted from the People to the defendant. The presumption of innocence continues throughout the trial."

Therefore, the court's conclusions in this case are as follows:

(1) The exception as to a non-conforming use in the zoning ordinance is in the nature of a proviso, with the result that the

People are not required to negative it in the information, nor to adduce proof of such negative to make out a *prima facie* case. The court below, therefore, did not err in denying the motion to dismiss on that ground upon the close of the People's case.

(2) There rested upon the defendant the duty of going forward with proof tending to show the existence of a non-conforming use, and, having adduced such proof, if sufficient to show such use or to tend to show it, then, at the close of the whole case, the burden would still rest upon the People to establish beyond a reasonable doubt that the defendant was guilty of the act charged, and thus satisfy the court or jury that the use was not a non-conforming use.

That the present case is governed by the general rules applicable to the prosecution of a defendant for a crime may not well be disputed. The city of Long Beach was empowered by section 42 of the Second Class Cities Law to provide that any person guilty of violation of the ordinance should be guilty of a misdemeanor punishable by a fine not to exceed $150 or imprisonment not exceeding 150 days or both such fine and imprisonment, or might provide for a penalty not to exceed $500 to be recovered by the city in a civil action; and, in addition thereto, the city might proceed to enjoin violation of the ordinance or to compel compliance therewith. In accordance with such authorization, the city provided, in section 26 of its ordinance of 1930, that a violation thereof should be punishable by a fine not exceeding $150 or by imprisonment not exceeding 150 days or by both such fine and imprisonment, or by a penalty of $500 to be recovered by the city in a civil action.

Therefore, the city might have proceeded, by way of a civil action, to recover a penalty or to restrain violation by an injunction, in which case the rules as to burden of proof applicable to civil actions would be effective. The city, however, has elected to proceed criminally to prosecute the defendant for the commission of a misdemeanor punishable by fine and imprisonment. It seems beyond question, therefore, that the rules to be applied here are those applicable in criminal cases which place upon the People the burden of proof to the satisfaction of the court beyond a reasonable doubt that the defendant was guilty of the crime with which she was charged. Although, therefore, the People were not required, in order to establish a *prima facie* case, to adduce proof in the first instance to show that the present use of the premises was not a non-conforming use constituting an exception, and although the burden rested upon the defendant to the extent of going forward with proof to show such non-conforming use, nevertheless, after such proof had been made and the case closed, the burden of

showing the defendant's guilt beyond a reasonable doubt still rested upon the People.

It is, therefore, necessary to examine the evidence both with respect to the present use of the premises, as proven by the People, and with respect to their former use at the time of and prior to the enactment of the ordinance, as adduced by the defendant, to determine whether the trial court properly found that the defendant's guilt had been proven beyond a reasonable doubt.

As to the present use of the premises, the proof adduced by the People, as has already been indicated, was sufficient, in the opinion of this court, to establish a *prima facie* case of violation of the ordinance by use of the premises for a purpose other than a one-family house for a single housekeeping unit only, but, on the contrary, for the purpose of a rooming house as a business. The proof presented by the defendant was not directed to contradict the evidence produced by the People. On the contrary, the defendant apparently proceeded upon the assumption that the evidence on the part of the People established the existence of a present use for the purpose of a rooming house as a business but asserted that such use did not violate the ordinance because it was the same use to which the premises had been devoted almost continuously since prior to the enactment of the original zoning ordinance.

The defendant's proof consisted entirely of the testimony of Mr. Schultz, a former owner of the premises, who had occupied the same from the year 1920 until the year 1935. The question presented was whether upon his testimony the use of the premises at the time of the enactment of the ordinance and thereafter was a use of the same for a rooming house as a business. Under the decision of the Court of Appeals in the *Baddour* case (*supra*), it remains for the trial court in each particular case to determine from the evidence whether the principal use to which the premises are devoted is that of a boarding or rooming house as a business or whether such principal use is as a home for the boarding house keeper with the taking of boarders or roomers as an incident to such use. This case was tried and determined by the court below without a jury. The question for this court to decide is whether the court below, having found itself, according to its decision, satisfied beyond a reasonable doubt that the defendant was guilty of a violation of the ordinance, the evidence upon which that decision rested was sufficient to sustain it. As has already been said, the proof on the part of the People was sufficient standing alone to establish that the defendant was presently using the premises in violation of the ordinance within the decision in the

*Baddour* case. The defendant did not attempt to dispute that proof, but, on the contrary, directed her proof entirely toward attempting to show that the present use of the premises was the same use to which they were put when the zoning ordinance was enacted. The testimony of Mr. Schultz, in support of that claim, was not satisfactory to the court below upon the question whether the house was then being used for boarders and roomers as a business or whether it was merely the home of Mr. Schultz who took in friends or relatives as boarders or roomers as an incident to his principal use thereof as a home. This court finds the same difficulty in evaluating the testimony of Mr. Schultz as was experienced by the trial court. That court, which heard and saw the witnesses and, particularly, Mr. Schultz, concluded, from the latter's testimony, that the alleged non-conforming use was not, in fact, a use of the premises for a boarding or rooming house as a business, and was, therefore, not in truth a non-conforming use. I think that the trial court was justified in its conclusion that the present use of the premises was for a boarding or rooming house as a business, and that such use was not the use to which the premises were being put when the ordinance was enacted; and, therefore, this court may not say that the decision of the court below was contrary to the evidence and to the weight thereof.

The judgment of conviction is, therefore, affirmed.