The People of the State of New York, Respondent, v. Constantine D'Amato, Appellant.

First Department, March 16, 1961.

*Abraham L. Shapiro* of counsel (*Joel H. Weinberg* with him on the brief; *Edwin Stephen Schweig* and *Julius November,* attorneys), for appellant.

*Daniel M. Cohen* of counsel (*Paxton Blair* and *Irving Galt* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

EAGER, J. This is an appeal by defendant from a judgment of the Court of Special Sessions of the City of New York, convicting him of a misdemeanor in the failing to obey the command of a subpœna, in violation of provisions of section 343 of the General Business Law, and also from all preliminary and intermediate orders made and entered herein.

Said section 343 of the General Business Law authorizes investigations by the Attorney-General with respect to any plan, scheme, agreement, practice or act appearing to be in violation of the statutory provisions against monopolies or agreements in restraint of trade. See, further, said section 343 of the General Business Law. In connection with any such investigation, the Attorney-General, his deputy, assistant or other officer designated by him, is empowered to subpœna witnesses, to compel their attendance and to examine them under oath. There is the provision, then, that: " If a person subpœnaed to attend such inquiry fails to obey the command of the subpœna without good cause, or if a person in attendance upon

such inquiry shall without reasonable cause refuse to be sworn * * * he shall be guilty of a misdemeanor.''

We have examined the defendant's contentions with respect to alleged insufficiency of the information to charge him with violation of the provisions of said section and with respect to alleged lack of power of the Attorney-General to appear before the Grand Jury and to institute and maintain this prosecution; and we find no merit in them.

Principally urged by the defendant is the point that, upon the whole case, the People failed to prove his guilt beyond a reasonable doubt. Incidentally, the defendant claims that his failure to respond to the subpœna was not '' without good cause '' and that, in any event, the People did not meet the burden which he says was upon them to show that his nonappearance was '' without good cause ''.

The People, as an alleged prima facie case, merely established the due service of a proper subpœna and the failure of the defendant to appear in response to the command thereof. This subpœna required the defendant's appearance on November 18, 1959 at the New York State Building, 80 Centre Street, New York, New York, to testify '' in regard to matters relating to the practices of the prize fighting industry, Constantine D'Amato and others in unlawfully interfering with the free exercise of any activity in this State, or the free pursuit in this State of any lawful business, trade, or occupation ''. It is conceded that the subpœna was duly served upon the defendant on November 10, 1959, and that he did not in fact appear on the return day of the subpœna.

The defendant, on a motion to dismiss at the end of the People's case took the position that he was not bound to show that he had '' good cause '' for not appearing. On denial of this motion, the defendant then called a number of witnesses. By their testimony it was developed that one Edwin Schweig was the attorney handling most of the defendant's legal affairs and was fully conversant with the Floyd Patterson Enterprises, Ltd., which was being investigated. In November, 1959, however, Schweig was abroad in Dutch Guiana and not able to be present to represent the defendant on the stated return day of the subpœna. The process server, an attorney representing the Attorney-General testified that, when he served the subpœna, a Mr. November, another attorney representing the defendant, was present and said to the process server, '' Mr. Schweig will not be back until later than the 18th ''. The process server then said to Mr. November, '' Nevertheless, if you want a later date you'll have to ask for it.''

Following the service of the subpœna, Mr. Weinberg and Mr. November, attorneys, who were also representing the defendant, were in touch with the office of the Attorney-General seeking an adjournment pending Mr. Schweig's return to this country. On November 16, 1959, the defendant, having an engagement on November 18 to meet at Paterson, New Jersey, with a member of the New Jersey Boxing Commission, spoke with Mr. Weinberg and informed him of the engagement in New Jersey, stating that he " wanted to know what my status was so that I could either go to the Attorney General's office or cancel the appointment " in New Jersey. Mr. Weinberg then told the defendant " that a request was going to be made for an adjournment, and that it would be all right." On November 17 Mr. Weinberg spoke with Mr. Galt, an Assistant Solicitor General, advising him that Mr. Schweig would not be back until after the 19th, and asked for an adjournment. Mr. Galt replied that there had been enough delay and that there was no reason for a further delay, particularly since Schweig's presence was not essential in the interests of his client. If representation were required, Mr. Galt suggested that one of the other attorneys representing the defendant could appear. Galt testified that he then advised the defendant's attorney that, if he did not show the next day, it would not be simply a contempt but a misdemeanor as well, and suggested that defendant's attorney look both at the subpœna and said section 343. Mr. Weinberg then communicated with Mr. Schweig in South America and thereafter telephoned Mr. Galt. Galt insisted, however, that the defendant be produced at the designated time and place. Weinberg then advised Galt that he would call again later, but no further call was thereafter received at the office of the Attorney-General.

Finally, it appears that the defendant phoned his attorneys here at about 5:00 P.M. on November 17, and was advised by Mr. Weinberg that it would be all right for him to keep the New Jersey appointment, and that is what the defendant did. At this time, however, the defendant's attorneys had been informed by the Attorney-General's office that the defendant would in fact be required to appear on the 18th at such office.

The defendant's position is that he relied upon the assurances and advice of his attorney in keeping the New Jersey appointment rather than appearing in answer to the subpœna on its return day. Under the circumstances, he insists that he had " good cause " for his nonappearance. Thus, he argues, his guilt was not established beyond a reasonable doubt.

In providing generally that "good cause" shall excuse noncompliance with the command of a subpœna served pursuant to section 343, the Legislature obviously had reference to any ground generally regarded in law as a valid excuse for a witness' nonappearance. Absent statutory provision therefor, we must look to the decisions to determine what is accepted as a valid excuse or "good cause" for the nonappearance of a duly subpœnaed witness. The question is to be considered in the light of the purposes of the subpœna process. One is to bear in mind that, as the means for compelling the attendance of witnesses so that their testimony may be obtained in aid of the functions of the Government, the subpœna is a very necessary process. (See *Matter of Barbara,* 7 A D 2d 340, 343.) The purposes of the subpœna process would be frustrated if a witness was allowed a measure of discretion as to whether or not he should obey the commands of a subpœna. "A subpœna has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned." (*United States v. Bryan,* 339 U. S. 323, 331.)

It is not necessary that the court now enumerate varied instances which may be considered to constitute "good cause" for noncompliance with the command of a subpœna. It is sufficient to conclude, as we do, that mere mistake on the part of a witness as to the necessity of attending at the time and place specified, where not induced by statements or conduct of one in authority, would not necessarily excuse a willful default in appearance pursuant to the terms of a subpœna duly served. Mistake of fact or ignorance does not necessarily constitute justification for the willful nonperformance of an act specifically required pursuant to the terms of every statute enacted in the exercise of the police power. (See *People* v. *Werner,* 174 N. Y. 132, 134; *People* v. *Shapiro,* 6 A D 2d 271, 275.) Thus, "[a] person is not absolved of willful wrongdoing because he relied on his attorney's advice". (*Matter of M. Anonymous,* 5 A D 2d 790, 791; also *Gardner* v. *People,* 62 N. Y. 299.) And it has been many times held that mere reliance by a witness upon his attorney's assurance or advice is not good cause for failing to obey the mandate of a subpœna or court order. (See *People ex rel. Springs* v. *Reid,* 139 App. Div. 551, 556; *Goldberg* v.

*Zimet,* 180 N. Y. S. 273; *Matter of Remy Sportswear,* 16 Misc 2d 407, 410; see, also, *Spohrer* v. *Cohen,* 3 Misc 2d 248.) As a matter of policy, the responsibility as to whether or not a subpœna shall be obeyed must rest solely with the witness and those in authority. If the witness may evade his responsibility by assuming to take the unjustified advice or assurances of third persons, the effectiveness of a subpœna as an essential process would be destroyed.

In view of the foregoing, it is clear that there was support in the evidence for a conviction of the defendant. The question of his guilt, however, was for the trier of the facts. Here, it appears that the trial court in arriving at a finding of guilt was in error with respect to the burden of proof, and, therefore, the conviction must be reversed and a new trial ordered.

The defendant, on a motion to dismiss at the end of the People's case and at the end of the entire case, made the specific point that the burden of proof was upon the People to establish not only the failure of defendant to respond to the subpœna which was served but also to show that the defendant did not have "good cause" for such failure. The trial court denied the motions, and at the close of the entire case expressly held that "a defendant must prove that he had good cause for not appearing * * *. Considering all the evidence, we conclude that the defendant has failed to establish that his reason for not obeying the subpœna was a good reason, or that the cause presented by him was a good cause." Such a holding, in effect placing upon the defendant the over-all burden of establishing circumstances which would prove his innocence, was erroneous.

The defendant argues that we have here a statute containing a true exception so that it is necessary for the People, in order to make out a prima facie case, to negate by pleading and proof the existence of "good cause" for the failure of the defendant to obey the command of the subpœna. On the other hand, the People argue that, whether or not we have in the statute here an exception or what is commonly known as a proviso, the defendant had the necessity of going forward in the first instance with proof that he had "good cause" for his nonappearance. "The general rule is that in dealing with a statutory crime exceptions must be negatived by the prosecution and provisos utilized as a matter of defense. Attempts to apply this general rule and distinguish between exceptions and provisos have resulted in many technicalities and in much subtlety. The two classes of provisions — exceptions and provisos — frequently come closely together and the rule of differentiation ought to be so applied as to comply with the requirements of common sense and rea-

sonable pleading.'' (*People* v. *Devinny,* 227 N. Y. 397, 401.) Thus, it is the further general rule that where the circumstances constituting the alleged justification or excuse for acts otherwise criminal in nature are facts peculiarly and almost exclusively within the defendant's firsthand knowledge, with the details not readily available to the People, he has the burden of going forward in the first instance with proof to establish the circumstances. (22 C. J. S., Criminal Law, § 571; *People* v. *Bradford,* 227 N. Y. 45; *People* v. *Kibler,* 106 N. Y. 321, 324; *Fleming* v. *People,* 27 N. Y. 329, 332; *People* v. *Kollender,* 169 Misc. 995.)

The circumstances in a particular case constituting an alleged good cause for a defendant's failure to respond to a subpœna duly served would generally be peculiarly within his knowledge. Generally he alone would be the one person who would know his reasons for not appearing on the return day. Thus, in a given case, if the prosecution were required in the first instance to present and explain away the reasons of the witness for his non-appearance, it could very well result in placing upon it an intolerable burden. We hold, therefore, that the burden was upon the defendant to come forward and show the alleged circumstances constituting the claimed '' good cause '' for his failure to appear in response to the subpœna; but it is clear that the over-all burden of the entire case remained upon the People. '' In a criminal case the defendant never has the burden of proof. The People must prove the case against him beyond a reasonable doubt.'' (*People* v. *Elmore,* 277 N. Y. 397, 405.) Assuming, as the People claim, that, upon a showing of the failure of a defendant to appear pursuant to a subpœna, duly served, the burden of going forward with evidence to show that defendant had good cause for his nonappearance is upon him, nevertheless, the over-all burden of establishing guilt of the defendant beyond a reasonable doubt never shifted from the People. (*People* v. *Sandgren,* 302 N. Y. 331, 335; *People* v. *Kollender,* 169 Misc. 995, *supra.*)

Thus, the trial court here committed error in holding in effect that the over-all burden was upon the defendant to establish circumstances which would prove his innocence, namely, that he had '' good cause '' for failure to obey the command of the subpœna. Therefore, the conviction of the defendant should be reversed on the law and a new trial ordered.

BOTEIN, P. J., BREITEL, RABIN and McNALLY, JJ., concur.

Judgment of conviction unanimously reversed, on the law, and a new trial ordered.