Aaron F. Goldstein, J.
The defendants are accused of violating subdivision 1 of section 436-7.0 of the New York City Administrative Code. Respective counsel for the People and for the defendants have, in lieu of calling witnesses, submitted the case to this court for decision, without a jury, on the basis of an agreed statement of facts as reflected in the minutes of the proceeding in this court, held on August 2, 1973.
Subdivision 1 of section 436-7.0 of the Administrative Code, so far as applicable here, reads as follows: ‘ ‘ It shall be unlawful for a licensed towing car owner or his agent to make repairs or to cause repairs to be made, for a consideration, on any motor vehicle that is involved in an accident and removed by a towing car, without first entering into a signed agreement with the owner or other person in charge of such motor vehicle authorizing such repairs.” (Emphasis added.)
The parties are in agreement as to the following basic facts:
1. That an automobile owned by Mr. O’Connor, hereinafter referred to as complainant, was involved in an accident.
2. That complainant executed to defendants, tow truck operators, written authorization to tow, and pursuant thereto the automobile was in fact towed to defendants’ premises.
3. That the automobile was covered by collision insurance, and complainant notified his insurance company as to the location of the automobile.
*248 4. That a duly authorized agent of the insurance company inspected the automobile at defendants’ premises, and authorized repair. (The record is silent as to whether such authorization was in writing.)
5. That complainant personally never authorized repair of the automobile, either orally or in writing.
6. That the automobile was in fact repaired by the defendants pursuant to authorization by the insurance company.
At the outset, it should be noted, that the fact pattern herein takes the case far beyond the ambit of the fundamental purpose of the legislation involved in this case. Unlike the usual statutory provisions, the legislative findings are in this instance set forth specifically as part and parcel of the statute itself, under subdivision (a) of section 436-7.0 thereof. Thus, the stated purpose of the law is to protect the public “ against fraud, exorbitant rates and similar abuses,” and with a view thereto the Legislature found that it is “ of vital importance * * * that owners and operators of motor vehicles which are disabled * * * shall have reasonable and adequate opportunity to determine * * * the person or firm to be retained to perform necessary repairs, without coercion or other improper practices by the persons rendering towing services.”
Clearly, the statute is designed to protect the owner of a vehicle involved in an accident from the pressure of submitting to an exorbitant repair estimate in a situation where, due to the exigencies arising from the accident, he is actually at an emotional disadvantage. Just as clearly, however, whatever pressures may originally have been present are certainly removed once the insurance adjuster appears on the scene. The ability of insurance companies to protect their interests is a matter of common knowledge, and any suggestion that an experienced adjuster might panic and submit out of fear or timidity to an unconscionable estimate must be rejected out of hand. It is true, however, that the prohibitory section of the statute is couched in terms which are broader than the stated legislative purpose, and since no express exception is provided for insurance adjusters, this court prefers to rest its decision in terms of the language of the prohibition and its application to this situation.
The statute is not limited to the requirement that the signed agreement to repair must be executed only with the owner of the vehicle. The provision lists an express alternative. The authorization must issue from the owner or 11 other person in charge of such motor vehicle.” The immediate question, then, *249 is whether the insurance company here was “in charge of” the vehicle. The statute itself provides the applicable definition. ‘ ‘1 Person in charge of a disabled vehicle ’ shall mean the operator or the owner thereof or any person designated by the owner to contract for the towing or repairing of the vehicle.” (Administrative Code, § 436-7.0, subd. b, par. 5.)
Where, as here, the owner of the vehicle himself sends the insurance company to the repair shop, any suggestion that the insurance company did not have authority to contract for repairs offends common sense. Counsel for defendant Pranzoni alleged that there was in fact such authority, without contradiction by the District Attorney at that point, and under the agreement between the parties we are inclined to accept this as part of the stipulation. However, at a later point, the District Attorney observed that “no evidence has been adduced” as to such authorization. As will be indicated, infra, the District Attorney is in error as to the burden of1 alleging and proving lack of authorization. In any event, there is nothing in the record as it stands to suggest that the insurance company did not have authority to contract for repairs. Certainly the defendants, faced here with a criminal charge, had every right to expect that an insurance agent sent by the owner of the vehicle did in fact have such authority. This court would be loath to apply the ancient doctrine of malum prohibitum, in the light of section 15.15 of the Penal Law: “ 2. Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense * * * if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both m and outside this chapter.” (Emphasis added.)
Although the court could appropriately rest its decision at this point, it prefers to allude to the doctrine of the necessity to prove the absence of negative exceptions in the enacting clause of a statute, under which it was incumbent upon the People to plead and to prove that the insurance company did not have authority to repair, a burden which was not sustained in this ease. The rule requiring pleading and proof by the People of negative exceptions in a criminal statute has been described in an exhaustive annotation as presenting “ one of the most frequent problems in criminal procedure, yet often one of the most baffling ”. (153 A. L. R. 1218, 1219.) Stated *250 briefly, the rule distinguishes between an exception in a statute, and a proviso-. Invariably, where liability of a defendant is negatived, under certain circumstances, and the negative appears in the enacting clause of the statute, this is considered an exception as opposed to a proviso, and the People are then required to plead and to prove the absence of the exception.
The leading New York decision is People v. Stedeker (175 N. Y. 57) where the defendant was indicted under a statute prohibiting bookmaking except on authorized race tracks. (Bookmaking on authorized race tracks was covered by a- separate statute.) The Court of Appeals sustained a demurrer to the indictment on the ground that it did not allege that the bookmaking did not occur on an authorized racetrack. Quoting Wharton on Criminal Law, the court explained (pp. 67, 69): “ ‘ If the exceptions themselves are stated in the enacting clause it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute.’ Such is the rule of this state * * * The indictment is fatally defective in failing to aver that the rooms kept and occupied by the defendants were not on a, race course authorized by statute.”
The rule has been scrupulously followed by the New York courts. (People v. Smith, 192 Misc. 965; People v. Bailey, 60 Misc 2d 283; People v. Tarlow, 249 App. Div. 224; People v. Silver, 251 App. Div. 309; People v. Rubenstein, 252 App. Div. 730.)
In People v. Kollender (169 Misc. 995, 998), the court, in a scholarly opinion, undertook a review of the law in this State, and enunciated the rule as follows: “ (1) When a.statute contains in and as a part of its enacting clause an exception or exceptions to the effect that in certain cases * * * the offense prohibited by the statute is not to be considered as having been committed, that constitutes a true exception which it is necessary for the plaintiff or the People in an action based upon the statute to negative both by pleading and by proof.” This accords precisely with the general and long-settled rule as explained in the annotation previously cited. (153 A. L. R. 1218.)
The legislation here involved presents a classic illustration of a negative exception embodied within the enacting clause of a statute. The provision does not prohibit repair to a towed automobile. The repair is prohibited only if a signed agreement is not first executed by the owner or the person in charge of the automobile. The People have pleaded and proved only *251 one portion of the negative —that the owner did not sign any authorization. But the People must go further — they must plead and prove the second portion as well: that either the owner himself was the only person 1 ‘ in charge of ’ ’ the automobile, or that if someone else was “ in charge ”, as certainly appears to be the case, that such person did not execute signed authorization to repair. In this connection, there is ample ground to find the information itself defective on that score, for it pleads only that the owner did not execute authorization, and is silent as to any person “ in charge of ” the automobile. A closely analogous situation was presented in People v. Leiby (184 Misc. 21) where an information charging unlawful intrusion was dismissed on demurrer because it alleged that those in charge of a hotel did not authorize defendant’s entry, without alleging that there was, as well, lack of authority from the owner of the land, as per the specific prohibition embodied.in the unlawful intrusion provision of the Penal Law. Said the court (p. 24): An allegation that there was no authority from those in charge of the hotel obviously does not allege lack of authority from the owner. So, too, in this case, an allegation .that the owner did not execute authority to repair obviously does not allege lack of authority from the person in charge of the automobile.
There is, of course, one specific exception to the rule requiring proof of the absence of negative exceptions, and this relates to matters peculiarly within the knowledge of the defendant. In those situations, while the People are still required to allege the negative exception, nevertheless the defendant may be required to go forward with his proof after such allegation, with the important qualification that the ultimate burden of proof beyond a reasonable doubt still remains with the People. But these cases, requiring the defendant to go forward, are strictly limited, generally to situations where it is alleged that the defendant is unlicensed. (See People v. Kollender, 169 Misc. 995, supra.) This case is not one of lack of license, and furthermore, as explained, supra, even the negative allegation is absent here.
Finally, the decision in People v. Tarlow (249 App. Div. 224) is particularly persuasive. In that case, the defendant was convicted of violating section 435-a of the Penal Law, which prohibited the sale of kosher and nonkosher meat in the same jfremises if the defendant (p. 226) “fails to.indicate on his window signs and all display advertising * * * £ kosher and nonkosher meat sold here ’ ’ ’. The People did not offer *252 proof of the absence of .signs, and the Appellate Division, in reversing the conviction, explained (pp. 226-227):
‘‘ In the section here under consideration * * * there is no prohibition against the sale of both kosher and non-kosher products at the same time and place. What is prohibited is the sale or offering to sell or the display of kosher and non-kosher products without the specified sign.
‘ ‘ Here, the failure to display the proper sign is part and parcel of the offense charged * * #
“ Moreover, whether or not the proper signs were displayed was not a fact lying peculiarly within the knowledge of' the defendant, which is one of the underlying reasons for the rule imposing the proof of the negative on the defendant.”
Here, too, lack of authorization from the insurance company is hardly within the peculiar knowledge of the defendant. It is easily susceptible of independent proof by testimony of the agent or agents of the insurance company who handled the transaction.
For all the reasons heretofore presented, this court finds that the People have not proved the guilt of the defendants beyond a reasonable doubt, and accordingly the defendants are acquitted and discharged.