OPINION OF THE COURT
Memorandum.
Judgment of conviction unanimously affirmed.
At trial, defendants conceded that they operated the premises in violation of the ordinance (Bayville Village Code § 80-45 [B] [5]), but claimed that they had a valid preexisting nonconforming use. A nonconforming use is generally referred to as a use of land which lawfully existed prior to the enactment of the zoning ordinance, and which is maintained after the effective date of the ordinance although it does not comply with the use restrictions applicable to the area in which it is situated (1 Salkin, New York Zoning Law and Practice § 10.02 [4th ed]). Such use will be permitted to continue, despite the enactment of a prohibitory zoning ordinance, if, and only if, enforcement of the ordinance would, by rendering valueless substantial improvements or businesses built up over the years, cause serious financial harm to the property owner (see People v Miller, 304 NY 105, 109 [1952]). The nonconforming use must be an actual use, rather than a contemplated use, that is, the use must have been substantial and actually in existence at the time the zoning restriction becomes effective (4 Rathkopf, Zoning and Planning §§ 72:8, 72:11). The right of continuance of a previously existing use is a right inherent in the land and said nonconforming use carries with it the right to customary incidental accessory uses (see 4 Rathkopf, Zoning and Planning § 72:23). Since the right to maintain a nonconforming use constitutes an exception to the zoning ordinance running in favor of the land in question, the burden of proving the existence of such right and the extent of such use is upon the person claiming the right to be exempt from the ordinance (see 4 Rathkopf, Zoning and Planning § 65:33; see also People v Sports Cars Unlimited, Inc., NYLJ, Oct. 18, 1985, at 17, col 1 [App Term, 9th & 10th Jud Dists]; People v Kollender, 169 Misc 995 [1939]).
In the case at bar, the evidence established that, commencing around 1928, the premises were used primarily as a gasoline station and automobile repair shop. Since the current photographs admitted into evidence do not show any gasoline pumps, that use may have been abandoned. However, the record is clear that the use of the premises as an automobile repair shop continued *103 through at least the time of the trial. Thus, the occasional sale of used automobiles during that period was at best an accessory use.
An “accessory use” is a use which is clearly incidental and customarily found in connection with and located in the same zoning lot as the principal use to which it is related (2 Rathkopf, Zoning and Planning § 33:1). Since the sale and brokerage of used automobiles is not, under ordinary circumstances, incidental to the automobile repair business (see People v Sports Cars Unlimited, Inc., NYLJ, Oct. 18, 1985, supra; 2 Rathkopf, Law of Zoning and Planning §§ 33:52, 33:78; see also Village of Waterford v O’Brien, 39 AD2d 490 [1972]; Fleury v Town of Essex Zoning Bd. of Adj., 141 Vt 411, 449 A2d 958 [1982]), the limited use of the premises for said purpose was in violation of the ordinance.
In addition, it should be noted that even if the use of the premises for the occasional sale of a used car was a valid accessory use, the testimony at trial established that said use was expanded and, as evidenced by the photographs admitted into evidence, may have supplanted the use of the automotive repair shop so as to become the principal use of the premises. In fact, the only testimony referring to the recent use of the premises as an automobile repair shop was to the effect that defendants were licensed by the State of New York as same. If this were the case, the complained of use would still be improper. A nonconforming accessory use cannot become the principal use as it would constitute an unlawful change of use (see People v Gagliardi, NYLJ, July 12, 1982, at 17, col 2 [App Term, 9th & 10th Jud Dists]).
Finally, we note that the sentence imposed was not excessive.
Rudolph, P.J., Angiolillo and McCabe, JJ., concur.