THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAMUEL ELMORE, Appellant.

Argued March 14, 1938; decided April 12, 1938.

*William C. Casey, Peter F. Gulotta* and *George Fogler* for appellant. The trial court's charge on the burden

of proof as to alibi misstated the law and constitutes reversible error. (*People* v. *Barbato,* 254 N. Y. 170; *People* v. *Shanley,* 49 App. Div. 56; *Ackerson* v. *People,* 124 Ill. 563; *People* v. *Stone,* 117 N. Y. 480; *State* v. *Henry,* 48 Iowa, 403; *Dawson* v. *State,* 62 Miss. 241; *State* v. *Woolard,* 111 Mo. 248; *People* v. *Stone,* 117 N. Y. 480; *People* v. *Allocca,* 183 App. Div. 571; *People* v. *Epaski,* 57 App. Div. 91; *People* v. *Cantor,* 71 App. Div. 189; *People* v. *Montlake,* 184 App. Div. 578; *People* v. *Russell,* 266 N. Y. 147; *People* v. *Pignataro,* 263 N. Y. 229.) The trial court erred in its rulings upon the question of the unreasonable detention of the defendant. (*People* v. *Marendi,* 213 N. Y. 600; *People* v. *White,* 176 N. Y. 331; *People* v. *Rogers,* 192 N. Y. 331; *People* v. *Pignataro,* 263 N. Y. 229; *People* v. *Mummiani,* 258 N. Y. 394; *People* v. *Alex,* 265 N. Y. 192.)

*Frank H. Innes, District Attorney* (*Thomas K. Hall* of counsel), for respondent. The erroneous statement of the trial court respecting the law of alibi, when viewed in conjunction with the main charge *in toto* and the overwhelming evidence of the defendant's guilt, did not mislead the jury or prejudice the substantial rights of the defendant. (*People* v. *Barbato,* 254 N. Y. 170; *People* v. *Walsh,* 248 N. Y. 553; *People* v. *Russell,* 266 N. Y. 147; *People* v. *Johnson,* 185 N. Y. 219; *People* v. *Koenig,* 180 N. Y. 155; *People* v. *Stone,* 117 N. Y. 480; *People* v. *Allocca,* 183 App. Div. 571; *People* v. *Cohen,* 223 N. Y. 406.) In the absence of violence or intimidation of any kind and in light of the defendant's first confession within twenty-six hours after his arrival at the police station, the circumstance of detention was a negative influence in the jury's determination of the issue relating to the voluntariness and truth thereof, and the omission of the trial court to charge was harmless in nature. (*People* v. *Schermerhorn,* 203 N. Y. 57; *People* v. *Doran,* 246 N. Y. 409; *People* v. *Weiner,* 248 N. Y. 118; *People* v. *Pignataro,* 263 N. Y. 229; *People* v. *Randazzio,*

194 N. Y. 147; *People* v. *Stone,* 117 N. Y. 480; *People* v. *Trybus,* 219 N. Y. 18; *People* v. *Kennedy,* 159 N. Y. 346; *People* v. *Rogers,* 192 N. Y. 331; *People* v. *Brasch,* 193 N. Y. 46; *People* v. *White,* 176 N. Y. 331.)

CRANE, Ch. J. The defendant has been convicted of murder in the first degree for having killed a little girl, Joan Kuleba, on Staten Island (Richmond county) on the 12th day of August, 1937, after or during a sexual assault upon her. It was a revolting crime and one over which indignation against the perpetrator rises as the evdence is read, but yet legal judgment must be kept in the balance and the case examined to determine whether the defendant's life has been forfeited by our rules of law. Twice the defendant confessed, and the confessions were taken down in writing and signed by him after he had read them. Corroboration of these confessions, as required by section 395 of the Code of Criminal Procedure, was provided by the testimony of a man named Flick; the discovery of the child's shoes and the bottle containing grasshoppers caught for the child by the defendant.

There is sufficient evidence if believed to justify the jury in finding the defendant guilty beyond a reasonable doubt, and yet we are obliged to reverse the judgment for reasons which we shall now explain.

There is another side which must be considered in the way the law of this State directs. The jury cannot brush it aside; neither can we say it is of little or no consequence.

On the morning of August 12, 1937, the defendant is alleged to have taken this little girl, Joan Kuleba, from South Beach, Staten Island, to a shack in the meadows or marshes, and there raped and killed her. He tells this in his confession. William Flick, a coach operator for the Staten Island Coach Company, was operating on Norway avenue and Olympia boulevard towards South Beach when he saw the defendant and this little girl walking in the street. She was dressed, all admit, in a red bathing suit.

The time he places as follows: " Between 1:00 and 1:01, one minute after one that afternoon. * * * Why the child looked like she was about six years old to me, a girl would be about six years old, I can't say just how tall or anything she was." He identified the defendant in court as the man.

The confession of the defendant confirms Flick's testimony of this meeting. Both knew each other.

After the assault, the defendant went home according to his story; spent the night, and the next day, Friday, the 13th, returned to the scene of the crime, saw the child was dead, went back to the beach and asked someone to notify the police. When the police came, they found the defendant on the spot, the warning having been given by him.

Leaving out the confession, we have established facts of the death of the child, her body in the shack, and the defendant notifying the police that a murder had been committed. The other independent fact outside of his confession is the testimony of Flick that the little girl and Elmore were seen on the day of the crime in the street some distance from the beach.

The defendant did not take the stand and our law says his failure so to do shall create no presumption against him. (See Code Crim. Proc. § 393.) This always strikes the layman as somewhat strange but such has been the law for many years and we, as well as the jury, are obliged to obey it. In other words, the defendant must be proved guilty by the testimony, or as the case comes to us for a review of the facts, must be proved guilty beyond a reasonable doubt upon the record after a trial according to fundamental rules of evidence.

Thus we have the case — Flick saw the defendant with the child at one o'clock P. M., on Thursday, the 12th. The defendant confesses according to the testimony of the police officers. The defense is, first, that the confession was made under duress or while the defendant was confined in jail or the police station from Friday until

Monday, without being taken before a magistrate as required by section 165 of the Code of Criminal Procedure, and, secondly, that he could not possibly have committed the crime because he was elsewhere at the time — the defense is an alibi.

To the evidence of Elmore's absence we must give serious attention. The defendant's wife says that he was home for lunch between twelve and one o'clock and that he went out thereafter to do errands for her at various stores and returned about four o'clock. The defendant's house is more than three miles from South Beach and as he had no car, and the evidence shows no other means of transportation (except railroads), it would have at least taken the defendant some time to traverse the distance between South Beach and his home on foot. His whereabouts is accounted for by eighteen witnesses, many of whom are merchants or employees having little or no interest in the defendant.

The People's witness Selma Goller saw the little girl on the beach about twelve-thirty " shortly after lunch." At about noon of that day Elmore, the defendant, was seen by Emma Keil and A. C. Baccarezza at a place about three miles from the beach. Baccarezza worked for the A. & P. Tea Company and saw the defendant in the store where he worked, apparently in Stapleton. Mrs. Elmore, the defendant's wife, says that he was at home at twelve-thirty-five. As has been said, this was all of three miles from the beach, or the scene of the crime. Mathilda J. McKittrick, who lived about three blocks from Elmore, saw him pass her house on the day of the 12th about twelve-thirty, possibly one o'clock. Louis Ginnis and Enroco Boggenao saw him between one and three o'clock in the afternoon about three miles from the scene of the occurence. Mrs. Elmore stated that she had sent the defendant after lunch on various errands in and about Stapleton; and the defendant produced the storekeepers and tradesmen to show that he had executed this commis-

sion, and had made purchases in the stores between one and three or four o'clock. For instance, between one-thirty and three-thirty he bought bengue at a drug store from Louis Ginnis. Edward Harris sold defendant a pair of trousers about three P. M., and sent him to Da Lecy to have them altered. Da Lecy altered the trousers between three and three-thirty P. M. Albert W. Miller, James McMahon, and James B. Kelly, all of the A. & P. Store in Stapleton, saw the defendant between three and four P. M., in the store. Ellen Feldrapp sold the defendant a huckleberry pie and a loaf of vienna bread, between three and four P. M. The defendant had a "few beers" in a saloon between three and four P. M., and was served by John Techky. He had the groceries with him at the time, and arrived home with them about four P. M. We notice that some of these witnesses are quite positive in placing the defendant as far as three miles away from South Beach at the time when the child is alleged to have been taken from South Beach and to have been seen with the defendant at Olympia boulevard and Norwood avenue. Of course all these witnesses may have been mistaken as to the time. It is somewhat difficult to believe that these storekeepers and clerks would be deliberately falsifying about the matter. However, we must remember that the jury were called upon to face an issue and to decide it either for or against the defendant; and if against him, they were to be convinced of their conclusion beyond a reasonable doubt.

Did the evidence produced by the defendant create a doubt as to whether he could have been the man who took the little girl from South Beach around noon of Thursday, the 12th, and the man seen by Flick with her on the street? That the defendant should have returned the next day to the scene of the crime, and then himself have notified the police of the murder, might also bear in some way upon the consideration of these points. Be it far from us to trespass upon the prerogatives of the jury

or even to suggest or intimate that the evidence does not weigh strongly against the defendant. It does. What we are attempting to explain here so that it will appear clearly is that there was a fair issue of fact for the jury; the guilt or innocence of the defendant was for the jurymen to determine; there was evidence in behalf of the defendant creating a question of fact, and we must, therefore, go further and see whether or not the jury were properly instructed on the law governing their deliberations.

The court was asked to charge the following:

" Mr. Gulotta: May I further respectfully ask your Honor to charge that by section 165 of the Code of Criminal Procedure, the defendant must in all cases be taken before the Magistrate's Court without unnecessary delay.

" The Court: I think I have sufficiently covered that question.

" Mr. Gulotta: I ask your Honor to charge that the violation by the Police of this Statute, that is, Section 165, which calls for prompt arraignment, is a crime under Penal Law, Section 1841.

" The Court: I decline to so charge.

" Mr. Gulotta: I respectfully except. I ask your Honor to charge the Jury that the detention of the defendant in the Police Station from Friday, August 13th, to Monday, August 16th, is a circumstance to be weighed by the jury in determining whether a confession has any testimonial value.

" The Court: I think I have sufficiently covered that, gentlemen." (It was not mentioned.)

The Code of Criminal Procedure, section 165, reads:

" *Defendant in all cases to be taken before a magistrate without delay.* The defendant must in all cases be taken before the magistrate without unnecessary delay, and he may give bail at any hour of the day or night."

In *People* v. *Alex*, 265 N. Y. 192, 194, we said:

"Here there was delay of almost thirty-six hours. Even where the police, for thirty-six hours, illegally delay arraignment after arrest, for the purpose of obtaining a confession, the confession is admissible, unless 'made, under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he (the defendant) shall not be prosecuted therefor.' (Code Crim. Proc. § 395.) Nevertheless, in determining whether a confession has been obtained as a result of a beating, or is voluntary, the circumstance that it was obtained while arraignment was illegally delayed for no apparent reason except that the police needed a confession in order to have competent proof of the commission of a crime, should be considered by the jury (*People* v. *Trybus,* 219 N. Y. 18.) In every case where there is a substantial question of the voluntary nature of a confession obtained while a defendant is in the custody of the police,. and arraignment is delayed, it is the duty of the trial judge, at least upon request of counsel, to charge that any 'unnecessary delay' in arraignment is forbidden by law and should be considered by them." "Delay in arraignment does not exclude a confession." (*People* v. *Doran,* 246 N. Y. 409, 423.)

While there was no evidence of violence used upon the defendant, and there is no claim that he was promised immunity, yet the jury may always consider, in fact must consider, whether the confession has been voluntarily made — that is, has not been produced by fear or under such circumstances and conditions as to lead one to believe that it was not the truth. Even when a confession is admitted in evidence, even when it is conceded to have been made, yet its truth is always a question for the jury and, in determining this, the jury must have all the circumstances surrounding its making. The jurors have the right, therefore, as has been stated by this court, to consider the detention of the defendant from Friday to Monday, while confessions were being taken. In this

case the detention may have had no effect whatever upon the defendant, and all that he said may be true but, nevertheless, this is not for the court, but the jury, to say; in coming to a decision the jurors must consider the continued restraint.

We do not say that we would reverse this case if this were the only error but, coupled with one more serious, we feel that even this cannot be overlooked.

We have stated the evidence and the issue regarding the alibi, in order that the charge to the jury upon this point may also be understood. In a criminal case the defendant never has the burden of proof. The People must prove the case against him beyond a reasonable doubt. In the case of an alibi, naturally he produces his evidence to show that either he is not the man, or else that he could not be the perpetrator of the crime, as he was elsewhere at the time of its commission. If this evidence creates a doubt — a reasonable doubt — in the mind of the jury, he must be acquitted. Never is he called upon to prove his defense beyond a reasonable doubt. (*People* v. *Barbato*, 254 N. Y. 170, 178, 179; *People* v. *Stone*, 117 N. Y. 480, 484.) This court said in the former case:

" If the proof as to an *alibi* raises a reasonable doubt in the minds of the jury as to whether the accused was present at the place and time where and when the crime was committed, the accused is entitled to have the defense fairly treated like any other defense and is not obliged to establish that it was impossible for him to commit the act charged. If under the evidence tending, if true, to prove an *alibi*, it may have been *possible* for the defendant to have committed the crime, it is still for the jury to determine whether, if the evidence is true, he availed himself of the possibility it afforded. * * * The instructions of the court were too strict in this respect. If the proof as to an *alibi*, when taken into consideration with all the other evidence, raises a reasonable doubt as

to defendant's guilt, he is entitled to an acquittal."
(See, also, *Brotherton* v. *People*, 75 N. Y. 159, 163.)

As to Elmore's defense, the judge charged:

" The burden of disproving the alibi rests upon the
People. If you are satisfied beyond a reasonable doubt
with the alibi, and that the alibi covers the time of the
commission of the crime; the proof of the alibi, with all the
other evidence, may raise a reasonable doubt as to the
defendant's presence at the place of crime, and the defend-
ant should then be acquitted." We must not be captious
or unduly critical and, although this charge is somewhat
confused because of the words. " If you are satisfied
beyond a reasonable doubt with the alibi," yet we would
pass it, were it not for the clear and definite explanation
which the trial judge made in reply to a request:

" Mr. Gulotta: I further ask your Honor to charge that
the defense of alibi need not necessarily be established by
the defendant beyond a reasonable doubt, but, quite to
the contrary, the jury may give to it such credence as in
their opinion it should be given.

" The Court: I think I have sufficiently covered that,
gentlemen. I informed you that the defense of alibi, like
every other defense, may be proved and must be proved
beyond a reasonable doubt by the defendant." This is
not the law. No matter how strong the evidence may be
against the defendant, we cannot overlook such a funda-
mental error, especially in view of what we have said the
evidence shows upon the question of the defendant's
whereabouts.

The judgment of conviction should be reversed, and a
new trial ordered.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and
RIPPEY, JJ., concur.

Judgment of conviction reversed, etc.