STATE OF NEW JERSEY, RESPONDENT, v. LEON STEVEN PIERCE, DEFENDANT-APPELLANT.

Argued March 6, 1950—Decided March 27, 1950.

Mr. *Franklin H. Berry* argued the cause for appellant.

Mr. *Robert A. Lederer* argued the cause for the State.

The opinion of the court was delivered by

WACHENFELD, J. This appeal is from a judgment entered on a verdict of murder in the first degree, life imprisonment having been imposed in accordance with the jury's determination.

The appellant was one of a group attending a birthday party on the night of March 15, 1949, at a private house in Lakewood, New Jersey. He was recently discharged from the Army and carried a semi-automatic pistol of Belgian manufacture. The pistol had a clip containing live ammunition. The decedent, Morris, was also present at the party. The record indicates he and the appellant had not met prior to this occasion.

About midnight the festivities at the house ended and a group of the guests, including the appellant and Morris, moved on to Jackson's Tavern in Lakewood, where the drinking and dancing that had been going on earlier were continued. Two of the girls attending the party went outside for fresh air and sat on the front seat of an automobile parked near the tavern. Soon Morris came out, approached the car, put his hand on the shoulder of one of the girls and started a conversation with them. Shortly thereafter the appellant came out of the tavern and went over to the car, where he said something to Morris to the effect that the girl on whose

shoulder he had his hand was another man's wife. He then struck Morris twice in the face and almost simultaneously a shot was heard. Morris dropped to the ground with a bullet wound in his head from which he died shortly thereafter.

The altercation took place in the early morning hours of March 16th. The appellant was apprehended at about one-thirty P. M. the following day and taken to the local police headquarters for questioning, which began between four and four-thirty in the afternoon and continued until about six-thirty. He was then locked in a cell at police headquarters until about nine o'clock in the evening and finally, at eleven-thirty P. M., a statement in question and answer form was taken, recorded by a stenographer who was present, and signed by Pierce at one-thirty the following afternoon. Later that afternoon he was taken before a police magistrate and arraigned.

At first, Pierce denied having fired the shot that killed Morris but later made a statement saying he had a gun in his hand when he struck Morris and it went off when he hit him the second time. At the trial the signed written statement to this effect was put in evidence over the objection of the defense counsel.

Two reasons are relied upon for a reversal: first, error in the admission of the appellant's signed statement; second, the verdict was contrary to the weight of the evidence.

As to the admissibility of the written statement, it is argued it was an involuntary, coerced confession obtained by means which violated the due process clause of the Fourteenth Amendment of the United States Constitution. The objection is founded upon the fact that prior to the making of the oral confession the appellant was not warned of his right to remain silent and advised that any statement he made might be used against him and his being questioned for several hours made him fearful and nervous to such a degree as to render the statement made involuntary and not admissible. It is also intimated the confession was induced by the threat to have his mother present at the inquiry. It is likewise urged, though not made a ground of objection in the

court below, that there was a violation of *Rule* 2:3-3 in that Pierce was not, after his arrest, taken "without unnecessary delay, before the nearest available magistrate." This violation, it is alleged, together with the other facts and circumstances, invalidated the confession.

The primary inquiry, in determining the admissibility of a statement made by an accused, is whether it was voluntarily made. *Roesel v. State,* 62 *N. J. L.* 216 (*E. & A.* 1898); *State v. Young,* 67 *N. J. L.* 223 (*E. & A.* 1902); *State v. Hand,* 71 *N. J. L.* 137 (*Sup. Ct.* 1904). The same rule obtains in the federal courts and was stated by Chief Justice Fuller in *Wilson v. U. S.,* 162 *U. S.* 613, 40 *L. Ed.* 1090 (1896):

> "In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort."

Whether a statement or confession is voluntary depends on the facts in each case. Its competency is primarily for the trial judge and the weight to be given it is determined by the jury. *State v. Compo,* 108 *N. J. L.* 499 (*E. & A.* 1932); *State v. Favorito,* 115 *N. J. L.* 197 (*E. & A.* 1935). The determination of the trial court will not as a rule be disturbed on appeal when there is sufficient evidence to support it. *State v. Cole,* 136 *N. J. L.* 606 (*E. & A.* 1948).

Many federal cases are cited disclosing various sets of factual developments which taken in their entirety were found to have created a state of coercion or duress sufficient to invalidate the resulting confessions. In *White v. Texas,* 310 *U. S.* 530, 84 *L. Ed.* 1342 (1940), a suspect was taken into the woods on several successive nights, tied to a tree and whipped. In *Chambers v. Florida,* 309 *U. S.* 227, 84 *L. Ed.* 716 (1940), there were five days of long examinations culminating in an all-night session that obviously produced the confession. In *Ashcraft v. Tennessee,* 322 *U. S.* 143, 88 *L. Ed.* 1192 (1944), thirty-six hours of continuous examination by relays of officers brought forth the confession complained of. In *Haley v. Ohio,* 332 *U. S.* 596, 92 *L. Ed.* 224 (1948),

a fifteen-year-old illiterate suspect was grilled by relays of officers from midnight to five A. M., when he capitulated and made the desired statement. In *Watts v. Indiana,* 93 *L. Ed.* 1434 (1949), six days of long periods of interrogation by relays of officers was undisputed. In *Harris v. South Carolina,* 93 *L. Ed.* 1440 (1949), there were three days of vigorous interrogation by relays of officers in stifling heat, while in *Turner v. Pennsylvania,* 93 *L. Ed.* 1443 (1949), the defendant was held incommunicado for four days with long periods of constant interrogation. These prolonged periods of interrogation, together with the other conditions and circumstances recited in each of the cases, were determined by the court to be improper and oppressive, making the resulting confessions inadmissible in evidence and violating the rule of "fundamental fairness."

In *State v. Cooper,* 2 *N. J.* 540 (1949), we held a confession freely and voluntarily given, uninduced by either hope or fear or other considerations, leading to the substitution of something else than the truth, is testimonially trustworthy and evidential where probative value alone is the measure of its worth, but that under the Fourteenth Amendment the inquiry must also include whether or not there is "that fundamental fairness essential to the very concept of justice."

After referring to the United States Supreme Court cases above recited and the determination the court there made on the respective facts involved as to when and under what circumstances an abuse of power to arrest offends the procedural standards of due process, we held:

"These are the criteria which determine the evidential competency of the confessions received in evidence here."

In *Bute v. Illinois,* 333 *U. S.* 640, 92 *L. Ed.* 986 (1948), the court, referring to the applicability of the due process clause in the Fourteenth Amendment to cases similar to the one presently being considered, said:

"The due process of law clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the

test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law. What it does require is that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land.' Those principles are applicable alike in all the States and do not depend upon or vary with local legislation."

Our inquiry, therefore, is directed to the circumstances existing during the interrogation of the appellant to determine whether or not duress or fear was created sufficient to rob his subsequent statement of its voluntary character and thereby render it inadmissible. The difficulty encountered is indicated by a concurring opinion in the *Haley case, supra:*

"* * * we have neither physical nor intellectual weights and measures by which judicial judgment can determine when pressures in securing a confession reach the coercive intensity that calls for the exclusion of a statement so secured."

Here, although only three actually participated, there were six persons present besides the accused in a small room during most of the interrogation. The substance of the complaint is that the presence of so many police made the appellant nervous and fearful. There is no evidence or claim that he was subjected to any threats of force or actual violence or that there was any physical condition of extreme discomfiture due to atmospheric or other conditions. All persons in the room were seated apparently quietly and calmly and there is no claim of unusual stress or strain. As a matter of fact, the record does not support the contention that the defendant was frightened or fearful. When asked a leading question implying the answer: "Question: Were you frightened?" the response was: "I was not feeling too good about it * * *." Not receiving the answer desired, counsel again on direct asked: "Did you have any fear when you were in the room with these officers?" Answer: "I didn't feel none too good." But still there was the absence of a claim by the accused, as suggested by counsel, that he was in fear at any time. Counsel once more assumed something that was never proven in the

record by asking the leading question: "Why should that scare you?" But the answer shows no embrasure of the conclusion insinuated and injected by counsel.

The circumstances here are hardly comparable to those under consideration in the cited United States Supreme Court cases. There were no long hours of uninterrupted grilling. The record shows but two hours of interrogation, after which the appellant was committed to a cell, left alone to compose himself and relax for a period of approximately two-and-a-half hours. Thereafter, he made his oral statement which was then reduced to writing in the presence of a stenographer. His testimony is barren of any intimation of force, fear or compulsion. The fear that arises out of a consciousness of guilt and a dread of the legal penalty which probably will and ought to fall is not the kind that will invalidate an otherwise voluntary confession.

As to the ground that the appellant was not advised of his right to remain silent or warned that any statement he made might be used against him, our courts have held uniformly that "such cautionary instructions are not an essential step in the establishment of the fact that a confession is voluntary." *State v. Hernia,* 68 *N. J. L.* 299 (*E. & A.* 1902); *State v. Cole, supra.* The general rule is, in the absence of a statute to the contrary, a voluntary confession is not rendered inadmissible because it was made without the accused having been cautioned or warned that it might be used against him or because he was not advised of his constitutional or legal rights such as his right to remain silent. This is the doctrine enunciated in *People v. Kennedy,* 159 *N. Y.* 346, 54 *N. E.* 51 (1899), where an accused was told by a police officer that he might as well tell the truth as it would save the police a lot of trouble. The court, commenting on the failure to give any cautionary warning to the accused, said:

"Moreover, there was no evidence that the statements were in any degree compulsory, or that they were induced by any improper influence whatsoever. While it is true that the defendant was under arrest when they were made, still they were not the result of an examination in any judicial proceeding. Nor could he have supposed

that he was required to make any statement whatever, except such as was * * * voluntary on his part. It is true, he was not informed by those interrogating him that what he said might be used against him upon a subsequent trial. Still, he must have understood such to have been the case, as he was a man of ordinary intelligence and education."

The federal courts reached a like conclusion, as indicated in *Wilson v. U. S., supra:*

"And it is laid down that it is not essential to the admissibility of a confession that it should appear that the person was warned that what he said would be used against him, but on the contrary, if the confession was voluntary, it is sufficient though it appear that he was not so warned."

While in *U. S. v. Lydecker*, 275 *Fed.* 976 (1921), the rule was stated in the following language:

"The fact that an accused was in custody does not render his confession involuntary, nor is it necessary that he should have been warned that what he said would be used against him. It is sufficient if the confession was voluntarily made, though he was not warned or advised that he had the right to remain silent."

The giving of such a warning tends to rebut a charge, if made, that the confession obtained was involuntary by reason of the circumstances under which it was secured. With the exception, however, of those states in which there exists a specific statute requiring such a warning, the general rule from our cases and those of other states, including the federal courts, is that the failure to warn an accused of his right to remain silent and that any statement he makes may be used against him does not of itself vitiate a confession or render it inadmissible.

██ ██ The appellant asserts and asks a reversal on the ground that one of the factors which induced him to make the statement was a threat to bring his mother to the police station and interrogate her.

This was not argued below nor submitted as a ground of objection to the admission of the statement in evidence nor called to the court's attention by a request to charge or otherwise. Not having been advanced below, it cannot be argued

here. *Schwartz v. Rothman*, 1 *N. J.* 206 (1948); *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.*, 3 *N. J.* 149 (1949). But giving it its full worth, it merely became a question of fact to be considered by the trial court and jury in determining whether the confession made was voluntary and the weight to be given it. The finding there made will not be disturbed on appeal if there is competent evidence to support it. *State v. Compo, supra; State v. Cole, supra.* There is such support in the testimony of the police officers, one of whom denied a threat was ever made and another who testified Pierce himself volunteered and brought up the subject of his mother. We find no error in this respect.

■ It is urged that the failure to take Pierce before the nearest available magistrate without unnecessary delay constitutes part of a "complex of circumstances" showing the subsequent statement was coerced and involuntary. We think the surrounding circumstances already discussed in this opinion demonstrate the lack of merit in this contention. But assuming an unnecessary delay, we find no justification for the rejection of a statement otherwise voluntarily and freely made as here evidenced.

■ *Rule* 2 :3–3 requires an accused to be arraigned before the nearest magistrate without unnecessary delay. This rule of procedure was adopted and promulgated by this court, designed to protect persons arrested and taken into custody from being held incommunicado for protracted periods of time, thus stimulating and permitting the suggestion that the confession, when given, was extorted through improper police pressure and methods more popularly designated as the "third degree."

■ Commenting on a similar provision in federal statutes, the United States Supreme Court in *McNab v. U. S.*, 318 *U. S.* 332, 87 *L. Ed.* 819 (1943), said:

"* * * this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime."

Whenever there has been any undue delay in taking an arrested person before a magistrate, in violation of our rule, careful scrutiny will be given to the conditions under which a statement was taken from him during the period of delay and such a statement will be admitted in evidence only when it convincingly appears that it was in fact and in truth voluntarily made.

The general rule is set forth in 20 *American Jurisprudence,* § 499, *p.* 432:

"The mere fact that there was an illegal delay in the arraignment of the prisoner will not render a confession involuntary and inadmissible, even though the delay is for the purpose of obtaining a confession. However, the fact of an illegal delay for no apparent reason except that the police need a confession in order to have competent proof of the crime is a matter to be considered in determining whether the confession was given voluntarily."

In *People v. Alex,* 265 *N. Y.* 192, 192 *N. E.* 289 (1934), a defendant was held without arraignment for thirty-six hours, during which period he made a confession. On appeal, he contended his confession had been improperly received in evidence because of the provision of the New York Code of Criminal Procedure that "the defendant must in all cases be taken before the magistrate without unnecessary delay." The violation of the statute, it was held, did not render the confession inadmissible but was a factor to be considered by the jury in determining its voluntariness. A similar holding is found in *People v. Elmore,* 277 *N. Y.* 397, 14 *N. E.* 2d 451 (1938).

Rule 5 of Federal Rules of Criminal Procedure provides an officer making an arrest with or without a warrant "shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States."

The decisions of the federal courts, as nearly as we can construe them, have not been uniform in applying the rule. Thus, in *Wheeler v. U. S.,* 82 *U. S. App. D. C.* 363, 165 *F.* 2d 225 (1947), despite a finding that the arresting officers had

acted wrongfully in holding the defendant from three o'clock Sunday morning until Tuesday before taking him before the nearest available commissioner, a confession taken on Monday night was held admissible in the absence of a showing it was induced by the delay. *Certiorari* was denied by the United States Supreme Court, 333 *U. S.* 829 (1948).

In a recent case, *Garner v. U. S.,* 174 *F.* 2d 499 (1949), it was stated that any confession made during a period of unnecessary delay in taking a prisoner before a committing magistrate is inadmissible even though the confession was not induced by the illegal detention and was voluntarily given. And in *Upshaw v. U. S.,* 335 *U. S.* 410, 93 *L. Ed.* 129 (1948), confessions made during a thirty-hour period of detention without taking, the prisoner before a commissioner were held inadmissible, it appearing the delay was for the purpose of furnishing an opportunity for further interrogation.

The construction and application, in the federal courts, of a federal rule of procedure is not, however, the criterion by which state courts are to be guided in construing the due process of law clause of the Fourteenth Amendment. So, in *Watts v. Indiana, Harris v. South Carolina* and *Turner v. Pennsylvania, supra,* the court found in each case a violation of a state law requiring prompt arraignment of an accused, but this was only one of many facts taken into consideration and recited in detail in each opinion which led to the conclusion that the confessions involved were involuntary.

Here the facts and circumstances surrounding the taking of the statement lead to the opposite conclusion. A confession is not rendered inadmissible solely by reason of a delay in taking the arrested person before a magistrate but that circumstance becomes an important factor to be given serious consideration in determining whether or not the confession was voluntarily made. The mere failure to follow the procedural rule, however, does not of itself destroy the voluntariness of the confession if the abuses the rule seeks to prevent did not in fact take place. The primary test of a statement is its voluntary character.

 Analysis of the testimony, including Pierce's, concerning the circumstances under which the questioning was conducted indicates no improper or abusive treatment. The period of questioning was hardly longer and the method employed no harsher than a witness would ordinarily undergo on cross-examination with all the protection the court and his own counsel could afford him. We see no error in the admission of the statement.

 As to the verdict being against the weight of the evidence, it is contended, first, the State did not prove the essentials of first-degree murder and, secondly, the proof showed that the fatal weapon was not in the appellant's possession at the time of the shooting.

Considering the points so made in converse order and taking the agreed premise that Morris was shot and killed by someone, we see no difficulty in the proof submitted. Admittedly the appellant owned the fatal gun and in his statement conceded he had possession and made use of it at the time in question. This in itself was sufficient to constitute a factual issue to be decided, as it was, by the jury, who, under the circumstances, had as much right to believe this version of the appellant's story as his later explanation denying he had the gun at the time of the shooting and suggesting that Julius Hogan had it while in the car and was responsible for what occurred.

Hogan denied this, saying he was in the tavern at the time, and his absence from the car is corroborated by the occupants of it, Ella May Hogan and Urusula Hogan. The medical testimony indicated the shot was fired at close range, while the undisputed record places the appellant at the time closest to the victim. The appellant testified he carried a loaded pistol to the party because it gave him "a sense of security" and frankly admitted lying to the police officers and fleeing from the scene of the crime. His testimony has many inconsistencies and contradictions. Clearly, the facts were for the jury and its conclusion is amply supported by the testimony.

As to whether or not the essentials of first-degree murder were proven, the issue is factual, there being no dispute as

to the law. It is contended there was a failure to prove intent to kill, malice and premeditation.

In the statement given to the police, the appellant said he took the gun out of his pocket in order to hit Morris with it and it went off accidentally. This conceded version of the accused admitting he had the gun in his hand at the time did not limit the province of the jury. It still had the right to reject this restricted avouchment if the circumstances demonstrated beyond a reasonable doubt that the killing was intentional, deliberate and premeditated. The testimony in this regard was substantial.

It is elementary law that a homicide with a deadly weapon in itself justifies a factual presumption there was an intention to take life. *State v. Maioni,* 78 *N. J. L.* 339 (*E. & A.* 1909); *State v. Jones,* 115 *N. J. L.* 257 (*E. & A.* 1935). The weapon used, time consumed and circumstances of the killing may support an inference of deliberation and premeditation. *State v. Jones, supra.*

In his statement the appellant admits he had "words" with the deceased before the "struggle" which ended with the gun going off, resulting in death. True, the defense effort was to establish, at most, an accidental killing but there was much evidence justifying a rejection of this interpretation by the jury. In addition to the inferred quarrel which arose while the dancing was in progress, there was the testimony of the ballistics expert that unless there was a round of ammunition in the chamber of the gun at the time Pierce took it out of his pocket, he would have to use both hands to prepare the gun for firing, and if the gun was not already cocked, it would require a trigger pressure of seven or eight pounds to fire it. This testimony makes unlikely an accidental discharge as alleged by the appellant.

It is suggested there was not time to conceive the intent and carry it into execution deliberately and with premeditation. No specific period of time is required but if the time is sufficient to fully and clearly conceive the design to kill and purposely and deliberately execute it, the require-

ments of our statute are satisfied. *State v. Cordasco,* 2 *N. J.* 189 (1949).

A verdict will not be set aside as against the weight of the evidence except when it is clearly the result of mistake, passion, prejudice or partiality. *State v. Hauptmann,* 115 *N. J. L.* 412 (*E. & A.* 1935); *State v. Cole, supra; State v. Cordasco, supra.*

Whether the guilt of the accused of the charge made against him was established beyond a reasonable doubt rested with the jury. It performed its allotted function in accordance with its oath and the record justifies its determination.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and BURLING—5.

*For reversal*—None.