Burke, J.
(dissenting). We dissent and vote to affirm. Absent a clear violation of due process, the rule concerning the admissibility of confessions has always been treated by this court according to principles of evidence, and not as a tool for the accomplishment of collateral purposes, such as control of police procedures. We should adhere to the rule that a confession given during illegal detention in the absence of counsel, found by the jury and this court to be voluntary, is admissible in evidence.
In a recent case in which the defendant had retained counsel before he was arrested, the Supreme Court of Illinois decided that the defendant was not deprived of due process through the refusal of the police to admit the lawyer and rejected a plea to bar the use of his confession. (People v. Escobedo, 28 Ill. 2d 41.) As stated by Mr. Justice Traynor in People v. Garner (57 Cal. 2d 135, 162-163): “ The perpetrator of a crime is *156 normally the one who knows most about it, and his confession, voluntarily made, is often the best evidence of his guilt that can be obtained. [Citations.] Only overwhelming social policies can justify the exclusion of such vital evidence. In the case of coerced confessions, the evidence may be unreliable; even if reliable, a free society cannot condone police methods that outrage the rights and dignity of a person whether they include physical brutality or psychological coercion. [Citations.] When a confession is voluntary, however, courts are reluctant to exclude it.” That the admission into evidence of a confession given under circumstances more aggravated than those present here does not violate due process is well established (Crooker v. California, 357 U. S. 433); ££ due process does not always require immediate honoring of a request to obtain one’s own counsel in the hours after arrest ” (p. 441 n.; Cicenia v. Lagay, 357 U. S. 504). The most recent statement of the United States Supreme Court reaffirms the rule that “ ‘ the question in each case is whether the defendant’s will was overborne at the time he confessed,’ Lynumn v. Illinois, 372 U. S. 528, 534. £ In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort. ’ ” (Haynes v. Washington, 373 U. S. 503, 513.)
Cases such as People v. Waterman (9 N Y 2d 561) and People v. Meyer (11 N Y 2d 162), cited by the majority, simply found a denial of due process in the violation of the defendant’s clear constitutional right to counsel after the commencement of judicial proceedings against him.
On the evidence before us in this case, the conclusion is inescapable that the confession was the voluntary product of Donovan’s will. No member of this court suggests otherwise. Yet, contrary to universally recognized principles of evidence and the requirements of due process, the majority has held that Donovan’s confession may not be used in evidence against him. We cannot too strongly dissent from the majority’s view of this court’s function in these premises. The Legislature has determined the grounds for exclusion of confessions in section 395 of the Code of Criminal Procedure: ££ A confession of a
defendant, whether in the course of judicial proceeding or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless *157 made upon a stipulation of the district attorney, that he shall not he prosecuted therefor”. As our Chief Judge has said, “No New York court has any such supervisory power over the administration of criminal justice as is exercised by the United States Supreme Court ” (People v. Lane, 10 N Y 2d 347, 360) ; and further, “We simply have no right to keep from jurors evidence of a confession which is in fact voluntary ” (id., p. 360). Although stated in an opinion dissenting on grounds not relevant here, these views of the Chief Judge accurately expressed the policy followed by this court up until now.
In our view, this decision’s unwarranted departure from the clear public policy of New York is pointed up by our long line of cases holding that confessions given during a period of illegal detention are not automatically excluded, but are submitted to the jury under instructions from the court on voluntariness (e.g., People v. Mummiani, 258 N. Y. 394; People v. Elmore, 277 N. Y. 397). This rule has been adhered to despite the view of a minority of our Judges that we should adopt the contrary Federal rule of McNabb v. United States (318 U. S. 332) and Mallory v. United States (354 U. S. 449). (See People v. Lane, 10 N Y 2d 347, supra; People v. Everett, 10 N Y 2d 500.) The majority has nevertheless decided that we must reverse because of the special circumstance that, during the period of illegal detention and prior to defendant’s written confession*, an attorney, retained by defendant’s family, sought and was refused admission to consult with his client. Regardless of our disapproval of this misconduct on the part of the police, we ought not assign to it any operative significance of its own in the abstract. As related to the admissibility of evidence, it assumes meaning only insofar as it tends to affect the voluntariness of the confession. In this regard, we do not see how the denial of access to an attorney adds anything to the effect of the illegal detention itself. The detention is not made legal for failure of anyone to insist on access to the defendant; nor is it rendered more illegal because of such demand. It is the lack of counsel which disadvantages a suspect held by the police. This lack may be due to the failure of family or friends to retain a lawyer or it may be due to a refusal to admit into the suspect’s presence *158 a lawyer who has been retained. True, an additional wrong has been done when the police refuse to admit a properly retained lawyer, but to reach a different result in such a case and exclude a voluntary confession is to hold that a defendant with a lawyer has greater rights than one not so favored.
' The majority, faced with our cases rejecting the McNabbMallory rule as a whole, has simply divided it into two parts, the interrogation and the denial of access to the defendant, and singled out the denial of access as an independently operative factor. This, of course, is sheer sleight of mind. Our cases rejecting the Mallory rule have always recognized that the detention foreclosed outside legal advice. To quote from but one leading case: ‘ ‘ The police are guilty of oppression and neglect of duty when they willfully detain a prisoner without arraigning him before a magistrate within a reasonable time. (Code Grim. Pro., § 165.) The conclusion is inescapable that they do this for the purpose of subjecting him to an inquisition impossible thereafter. Until arraignment before a magistrate, he is held incommunicado, without the protection that comes from the advice of counsel or the encouragement derived from the presence of family or friends.” (People v. Mummiani, 258 N. Y. 394, 399-400, supra-, italics in original.) How can it be said, therefore, that this case presents any new element calling for a distinction or departure from our rule that these matters are to be submitted to the jury under proper instructions as to their possible bearing on voluntariness? If illegal detention does not require exclusion of a confession, how can denial of access, itself but a universally recognized incident of illegal detention, work an automatic exclusion? What magic is there in the one that is not present in the other ?
Defendant also relies upon People v. Noble (9 N Y 2d 571), in which we reversed a conviction because (in the opinion of a minority of the court) of a refusal by the District Attorney to fairly respond to the defendant’s inquiry concerning his right to counsel. The refusal, it was reasoned, indicated to the defendant that he had no choice but to speak to the authorities. Once this assumption was made the conclusion easily followed that the statement was not voluntary. It is apparent that even, that reasoning, resting as it did on the impression given the defendant by the District Attorney’s comments, does not touch *159 a case where, as here, the conversation between the police and the lawyer was unknown to the defendant.
Apart from frustrating the historically recognized public interest in full presentation of evidence secured by means not violative of due process, this decision has implications for police investigation far beyond the limits of the facts presented. While here both the denial of access and the giving of the confession occurred during a period of illegal detention, the rule adopted applies as well to denial of access during a period of legal detention. For the court condemns questioning of an accused, absent counsel, after he or his attorney has requested that they be allowed to confer together. Traditionally, the writ of habeas corpus was the measure of counsel’s right to succor a client held by the police; and it did not lie if the suspect were legally detained. Henceforth, we take it, a mere request for admittance to a suspect legally held prior to arraignment will be more efficacious than the classic writ; not for release, of course, but for what matters most — the halting of all interrogation. The court, therefore, does not merely fashion a new remedy for a recognized right, but adds to the armory of rights to be enforced by the new remedy of exclusion.
In our opinion, therefore, the decisions of this court contrary to the McNabb-Mallory rule, so long as this court purports to adhere to them, foreclose any appeal based on the bare assertion that the refusal to admit a lawyer seeking an interview with an illegally detained suspect perforce renders a confession inadmissible.
It is all very well to speak of judicial integrity, cherished rights, fundamental imperatives of fair dealing, and potential police brutality, but it must be remembered that improper police interrogation can be brought to light before a jury of the defendant’s peers without a rule requiring that we exclude from evidence a confession even though voluntary. Is society so orderly, is crime so well under control, that we can indulge ourselves in the luxury of reversing convictions on grounds not touching the question of guilt or innocence or the voluntariness of a defendant’s statements? In the face of the statutory and common-law remedies available to one whose rights have been infringed by the police, and the statutory specification of the grounds for excluding confessions (Code Crim. Pro., § 395), *160 we have no commission to give additional remedies for such infringements at the expense of the security of the society into whose midst the admittedly guilty criminal may be released. For there are rights to security of person and property in every member of the community to be considered when this court abandons voluntariness as the test for admitting into evidence the confession of a defendant. In disagreeing with the majority opinion, however, we must make clear that the divergence does not touch the ethical ideal therein expressed. Considered in the abstract and apart from the society to which it must apply, there is no question but that the right to counsel is to be cherished and that the decision reached clearly throws an additional protective mantle around it. It is only when we consider counterbalancing interests (such as those of the next person who may be molested by the freed criminal) that we must pause before devising all possible rules, far beyond the requirements of due process, to reinforce the criminal defendant’s rights to the limit. In striking the proper balance, it is not amiss to note that this court is not confronted with the police persecutions of a despotic state. It is confronted with the too often impeded efforts of a civil service police force and of a District Attorney elected by the citizens of the community to control the increasing rate of crime.

 Donovan had made an oral confession, testified to by the police without objection, prior to the attorney’s arrival.