**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0101-16

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.V.,

     Defendant-Appellant.

_____

Submitted December 5, 2018 – Decided February 5, 2019
Remanded by the Supreme Court June 11, 2020.
Resubmitted June 12, 2020 – Decided July 2, 2020
Remanded by the Supreme Court November 20, 2020.
Resubmitted November 23, 2020 – Decided July 28, 2021

Before Judges Ostrer and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 13-12-1177.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Carol M. Henderson, Assistant Attorney General, of counsel and on the brief).

PER CURIAM

Defendant was sixty-five days shy of his eighteenth birthday when he robbed a man of his cell phone and stabbed him nine times in the head, neck and shoulders. After waiver to adult court, defendant pleaded guilty to first-degree attempted murder, see N.J.S.A. 2C:5-1, 11-3(a), and first-degree armed robbery, see N.J.S.A. 2C:15-1(a)(1), (2). The trial court sentenced him to eighteen years, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In our initial decision, we determined that the new statute concerning a juvenile's waiver to adult court, N.J.S.A. 2A:4A-26.1(c)(3), which was enacted in 2015, see L. 2015, c. 89, § 1, should apply retroactively to defendant's case. State v. J.V. (J.V. I), No. A-0101-16 (App. Div. Feb. 5, 2019) (slip op. at 14). We remanded for the trial court to consider N.J.S.A. 2A:4A:26.1(c)(3)(e) and (j), the new statute's standards pertaining to special education and mental health. But the Supreme Court reversed our retroactivity holding and remanded for consideration of defendant's remaining arguments. State v. J.V. (J.V. II), 242 N.J. 432, 444, 448 (2020). We then rejected defendant's sentencing arguments, State v. J.V. (J.V. III.), No. A-0101-16 (App. Div. July 2, 2020) (slip op. at 6-9). We assume the reader's familiarity with these prior decisions.

On November 20, 2020, the Supreme Court again returned this matter, instructing us to consider "defendant's arguments originally raised under the former waiver statute, N.J.S.A. 2A:4A-26." State v. J.V. (J.V. IV), 244 N.J. 400, 400 (2020).

Consequently, we must address POINT I(B) of defendant's initial appellate brief:

> EVEN UNDER N.J.S.A. 2A:4A-26, THE OLDER WAIVER STATUTE, THE PROSECUTOR ABUSED HER DISCRETION BY OVEREMPHASIZING THE PURPORTED "PREMEDITATED" NATURE OF THE VIOLENT ASSAULT.

In short, defendant contends that the prosecutor abused her discretion in waiving jurisdiction to adult court because she lacked sufficient evidence to conclude, in describing defendant's role and his harm to the victim, that defendant's attack was "premeditated." We disagree and affirm.

I.

In 2013 (the year the prosecutor sought waiver), the Code of Juvenile Justice provided that, where there is probable cause to believe that a juvenile fourteen or older committed one or more specified delinquent acts (including first-degree robbery and attempted murder), "the court shall . . . waive jurisdiction" and refer the case to adult court upon the prosecutor's motion. See

3

N.J.S.A. 2A:4A-26(a). Defendant does not dispute the fact that he was over fourteen or that he committed the requisite act(s); instead, he challenges the prosecutor's exercise of discretion in seeking waiver.

The prosecutor characterized defendant's crime in her written statement of reasons seeking waiver of jurisdiction, which she prepared to comply with the Attorney General's Juvenile Waiver Guidelines. Off. of the Att'y Gen., Juvenile Waiver Guidelines 7 (Mar. 14, 2000) [hereinafter Guidelines], http://www.njdcj.org/agguide/pdfs/AG-Juvenile-Waiver-Guidelines.pdf.[1] She began her statement by briefly describing the nature of the offense:

> On May 12, 2013, at approximately 3:45 p.m., the victim . . . was waiting for a train at the Passaic Train Station. At that time, he was approached by juvenile, [J.V.], who requested to borrow his cell phone. The victim lent the juvenile his cell phone, and was promptly informed by the juvenile that he did not intend to return his phone. When the victim tried to retrieve his phone, the juvenile pulled out a kitchen knife and repeatedly stabbed the victim in the head, and ultimately fled with the phone. Witnesses called the

---

[1] The Attorney General promulgated the Guidelines pursuant to L. 1999, c. 373, § 1 (codified at N.J.S.A. 2A:4A-26(f), then repealed by L. 2015, c. 89, § 6) "to ensure the uniform application" of the statute authorizing so-called "prosecutorial" waivers — that is, cases in which "the authority to make the waiver decision has been transferred from the judiciary to the county prosecutor." Guidelines at 2; see also State in the Interest of V.A., 212 N.J. 1, 9-12 (2012) (describing source and substance of Guidelines). Under the new waiver statute, the Attorney General also "may develop" guidelines to ensure uniform application of the law. N.J.S.A. 2A:4A-26.1(c).

police, and followed the juvenile, and as a result, the juvenile was apprehended near the train station; covered with the victim's blood on his shirt, and with the victim's cell phone in his possession. Upon apprehension, the juvenile informed the police of the location in which he dropped the knife, and ultimately the bloody knife was recovered. The juvenile was identified by two eyewitnesses, as well as the victim, as the perpetrator of the attack. After being read his Miranda rights, the juvenile admitted that he went to the train station, armed with a black handled knife, with a blade the length of his hand, with the intention of robbing someone. He stated that his plan was to ask someone if he could use their phone. He further explained that he saw the victim waiting at the station and proceeded to ask him if he could use his phone, and that once he was given the phone to use, he informed the victim that he was not going to return it. Finally, the juvenile demonstrated how he stabbed the victim around the right side of his face when the victim tried to retrieve his phone.

The prosecutor then addressed each of the fifteen prescribed factors, see Guidelines at 5-6, and determined that nine factors supported the State's waiver motion: (1) "[n]ature and circumstances of crime"; (2) "[r]ole of juvenile"; (3) "[g]rave and serious harm to victim or community"; (4) "[p]otential for grave and serious harm to victim or community"; (5) "[u]se or possession of a weapon"; (6) "[n]eed to deter juvenile and others from committing similar crimes"; (7) "[n]eed for longer term of incarceration permissible for adults"; (8) "[l]ikelihood of conviction or need for [g]rand [j]ury investigation"; and (9)

5

"victim's request for waiver." Conversely, she determined that six factors did not apply to defendant's case: (1) "[d]eath of victim"; (2) "[i]n cases with codefendants, waiver would avoid injustice"; (3) "[s]eriousness of prior adjudications of delinquency"; (4) "[p]rior waiver and conviction"; (5) "[g]ang involvement"; and (6) "[h]istory of physical violence indicating substantial danger to others."

Relevant to defendant's appeal, the prosecutor elaborated on the "[r]ole of [the] juvenile," stating that defendant "carried out a premeditated, unprovoked, vicious attack on an innocent stranger"; she also elaborated on "[g]rave and serious harm to victim or community," stating that "[t]his premeditated, unprovoked, vicious attack caused grave and serious physical and emotional harm to the victim." With respect to this factor, the prosecutor also detailed the serious nature of the victim's injuries, disability, and disfigurement.

At the waiver hearing, Passaic Police Detective Thomas L. Ragsdale described the police investigation of the attack. He also described defendant's custodial statement, which defendant gave in Spanish with a Spanish-speaking officer's help.[2] The detective's testimony substantiated the prosecutor's

[2] The statement was video-recorded and transcribed, but defendant has not included the video or the transcript in the record on appeal.

6

description (quoted above) of the offense and confirmed defendant's criminal intent. Asked to discuss defendant's interview, the detective testified that defendant admitted to taking "a kitchen knife" "with a blade at least the length of his hand" and going "to the train station" "[t]o rob someone of . . . their cell phone." He testified, too, that defendant claimed that the victim threw the first punch, which defendant countered by stabbing the victim.

The detective also recounted the victim's version of the crime. According to the victim, defendant asked the victim if he could use his phone. The victim obliged. But not long after that, defendant said that he was going to keep the phone, and he punched the victim. The victim defended himself as defendant continued to punch him — but he soon realized that the punches were really stabbings.

In the prosecutor's summation in support of waiver, she asserted that "this was a premeditated attack, vicious attack, on an innocent man." Defense counsel challenged neither the prosecutor's exercise of discretion in seeking waiver, nor the presence of probable cause to charge defendant with what would be attempted murder and first-degree robbery if committed by an adult. The court credited Detective Ragsdale, recounted the evidence, and granted the State's motion.

A-0101-16

Many months later, in defendant's allocution supporting his guilty plea, defendant described his criminal purpose. He said he went to the train station "[t]o rob," and he took a kitchen knife with a four-inch blade to assist him in the robbery. After he told the victim that he was going to keep his phone, the victim said, "[G]ive it back to me, the phone is mine." Asked what happened next, defendant testified, "Then I started stabbing him." Asked, "[A]s you were stabbing him, what was your intent at that point?" defendant answered, "Kill him."

## II.

In reviewing an N.J.S.A. 2A:4A-26 prosecutorial waiver, we apply the same abuse-of-discretion standard as the trial court. See State in the Interest of V.A., 212 N.J. 1, 8-9 (2012); cf. State v. Maddocks, 80 N.J. 98, 104-05 (1979) (clarifying that in PTI context, "[i]ssues concerning the propriety of the prosecutor's consideration of a particular factor are akin to 'questions of law'" and are thus subject to de novo review). We will grant a defendant's application for relief if that defendant "show[s] clearly and convincingly" that the prosecutor abused his or her discretion. V.A., 212 N.J. at 26.

In applying that standard of review, we assess whether the prosecutor's statement of reasons demonstrates "that the prosecutor actually considered" the

8

factors listed in the Guidelines; that is, we assess whether the statement "provide[s] enough of a fact-based explanation to support the conclusion that the factor supports waiver." Id. at 26, 28. We also heed the well-settled definition of an abuse of discretion: a court abuses its discretion "by relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment." State v. S.N., 231 N.J. 497, 500 (2018).

Here, defendant contends that the prosecutor abused her discretion by relying on the premeditated nature of the attack, "notwithstanding the absence of clear evidence that J.V. actually premeditated the attack in the record."[3] Defendant argues that there were no proofs that he "intended to kill [the victim] . . . in advance," or that he "planned to use the knife as a means of furthering the robbery" as opposed to defending himself if his planned theft "went awry."

Because defendant did not bring "to the attention of the trial . . . court" his claim that the prosecutor abused her discretion, we review the claim for plain error. R. 2:10-2. But defendant's arguments are unavailing. We find no error, let alone plain error.

---

[3] Defendant asserts that, because the prosecutor could not have considered defendant's plea-allocution admissions when she decided to seek the waiver, we cannot consider those admissions in reviewing her decision.

Defendant misplaces the burden when he argues the prosecutor did not support her factual findings by "clear evidence." Rather, defendant is the one who must "show clearly and convincingly," see V.A., 212 N.J. at 26, that the prosecutor abused her discretion in her premeditation finding. Defendant has failed to surmount that hurdle.

Defendant evidently presumes that an attack is not premeditated unless a significant amount of time elapses between formulating a plan to attack and the attack itself. However, "premeditation" as an element of first-degree murder under our pre-Code law meant "the conception of the design or plan to kill." State v. Di Paolo, 34 N.J. 279, 294-95 (1961).[4] "No specific period of time [was] required[,] but if the time is sufficient to fully and clearly conceive the design to kill and purposely and deliberately execute it, the requirements of [the] statute are satisfied." State v. Pierce, 4 N.J. 252, 267-68 (1950) (rejecting contention that there was insufficient time to commit premeditated murder where shooting occurred during a confrontation).[5]

---

[4] N.J.S.A. 2A:113-2 (1965) (repealed 1978) stated: "Murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing . . . is murder in the first degree."

[5] Other jurisdictions have viewed "premeditation" similarly. See, e.g., People v. Donnelly, 210 P. 523, 523 (Cal. 1922) (quoting People v. Cotta, 49 Cal. 166, 168 (1874)) (noting that, for there to be "concurrence of will, deliberation, and

The evidence presented at the waiver hearing, including circumstantial evidence, was sufficient for the prosecutor to conclude that defendant's attack was "premeditated." Defendant armed himself with a knife as he set off for the train station to steal a cell phone. While defendant posits that he may have only carried the weapon for self-defense, the contrary conclusion — that he intended to use it against his victim — is not unreasonable, given the nature of the weapon and the way defendant actually used it. See id. at 267 (stating that "[t]he weapon used," among other factors, "may support an inference of deliberation and premeditation").

But even if defendant did not set out for the station with the intent to stab his victim, he had time enough to premeditate his attack during the confrontation. The victim stated that defendant threw the first punch after the victim asked for his phone back. However, as the victim soon realized, defendant did not actually throw punches — although he could have. He instead chose to stab the victim. We do not rely on defendant's plea-allocution

_____

premeditation," "no appreciable" amount of time need elapse "between the intention to kill, and the act of killing"; the intent and the act "may be as instantaneous as successive thoughts of the mind"); Matthew A. Pauley, Murder by Premeditation, 36 Am. Crim. L. Rev. 145, 148-56 (1999) (discussing and critiquing this approach).

11

admissions, but those admissions only confirm the prosecutor's initial characterization of the attack.

In sum, applying our deferential standard of review, we discern no basis to disturb the prosecutor's exercise of discretion based on her characterization of defendant's attack as "premeditated."

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0101-16